LIMING, Appellee and Cross–Appellant,

v.

LIMING, Appellant and Cross–Appellee.

[Cite as *Liming v. Liming* (1996), 117 Ohio App.3d 617.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 96CA613.

Decided Dec. 30, 1996.

*Charles H. Wilson, Jr.,* for appellee and cross-appellant.

*Stephen C. Rodeheffer,* for appellant and cross-appellee.

STEPHENSON, Judge.

This is an appeal and cross-appeal from a judgment entered by the Common Pleas Court of Adams County, Ohio, annulling the marriage between Delores Dorton Liming, plaintiff below and cross-appellant herein, and Richard Liming, defendant below and appellant herein, and dividing their property. The following errors are assigned by appellant for our review:

I. "The trial court erred in failing to make written findings of fact to explain its award of the appellant's separate property to the appellee."

II. "The trial court erred in failing to make an equal division of property or in providing written findings that support a determination that the marital property had been equitably divided."

Cross-appellant presents her own assignments of error as follows:

I. "The magistrate and trial court erred to the prejudice of ths [*sic*] plaintiff in not awarding to her any sums of money to compensate her for the $80,000.00 that she paid towards the purchase of the motorcoach that the parties initially purchased on which the defendant had the benefit of depreciation on two of his yearly tax returns."

II. "The trial court and magistrate erred to the prejudice of plaintiff in not awarding to plaintiff her legal expenses."

The record reveals the following facts pertinent to this appeal. Each of the parties in the cause *sub judice* had previously been married. Cross-appellant was a widow who had lost her husband in 1990. Similarly, appellant was a widower who had lost his first wife and had divorced a second one. The two had apparently known each other for some time and then got reacquainted when appellant returned for the funeral of cross-appellant's first husband. They began spending more and more time together, and, finally, their relationship culminated in a wedding ceremony in the Bahamas Islands on February 1, 1991. Both parties brought a fair amount of assets into this union. No children were ever born as issue of the marriage.

By all accounts, the parties "had a good time" after they were first married and went on a "whirlwind" of traveling and spending money. This all came to an

abrupt end in 1993. Appellant "advised" his wife "that he no longer wanted to be married." Moreover, while cleaning some things out of one of their automobiles, cross-appellant discovered "some papers" which indicated that her husband's divorce from his second wife had not been finalized by the time they were married. Cross-appellant commenced the action below on June 7, 1994, alleging that her husband had been guilty of fraud. She asked for an annulment of their "marriage" as well as a division of marital property and the return of $100,000 that she had supposedly invested in her husband's separate property. Appellant filed an answer denying the allegations against him and asserting, *inter alia,* that the court *lacked* jurisdiction to make any ruling with respect to the couple's property.[1] The issue of jurisdiction was strenuously contested during the proceedings below and several evidentiary hearings were held relative to this point during 1994 and 1995. It was ultimately determined that there were sufficient "minimum contacts" for the state of Ohio to assert jurisdiction over appellant and the couple's property. That determination has not been challenged on appeal.

The matter proceeded to trial on the remaining issues on July 7, 1995. A decision was issued by the magistrate recommending that the annulment of marriage be granted and proposing a distribution of property. It was expressly noted in this decision that the proposed distribution of property was "based on the principles set out in Ohio Revised Code Section 3105.171." Both sides filed objections to the magistrate's decision challenging, among other things, the proposed distribution of property. The objections were ultimately overruled, and, on January 26, 1996, the lower court entered judgment annulling the marriage and adopting the division of property proposed by the magistrate in his decision. This appeal followed.

Appellant argues in his two assignments of error that the trial court erred in not awarding him his separate property and in not making a more equal division of marital property (or at least making written findings to support a determination that the property had been divided equitably). Similarly, in the first cross-assignment of error, cross-appellant argues that the trial court erroneously failed to order her husband to reimburse her for the $80,000 she had invested in certain property bought during the marriage. We address all three assignments of error together because they involve the same problematic legal analysis applied to this case. The magistrate, the court below and the parties herein have all based their positions on the underlying premise that R.C. 3105.171(B) applies to these proceedings. That statute requires trial courts to divide marital property and separate property equitably between the spouses. This requires, in most

---

1. Although cross-appellant had resumed residency in Adams County, Ohio, her husband was apparently a resident of California. The parties also owned real estate in North Carolina and Oregon.

instances, that marital property be divided equally. *Id.* at (C)(1). However, if equal division would produce an inequitable result, then the property may be divided in such a way as the court determines to be equitable. *Id.*

The problem with applying this provision to the cause *sub judice* is that R.C. 3105.171(B), by its express terms, applies only to divorce and legal separation proceedings. Its application to an annulment proceeding is highly questionable. See Baldwin's Ohio Domestic Relations Law (1992) 177, Section 7.06(C). In fact, we have found nothing in our research to show that such provisions have ever been applied in the strict context of an annulment of marriage. Most courts have held that the property rights of litigants in an annulment proceeding are only those that attach to persons in an individual capacity and are not the same rights usually affiliated with a husband and wife in a divorce proceeding. See, *e.g., Short v. Short* (App.1951), 61 Ohio Law Abs. 49, 51–52, 102 N.E.2d 719, 720; *Levy v. Levy* (May 2, 1978), Franklin App. No. 77AP–918, unreported. A property division in annulment is not based on a legal status such as marriage but is more of an adjustment of property interests between parties similar to a dissolution of a business partnership. Baldwin's Ohio Domestic Relations Law, *supra*, at 178. The judgment annulling a marriage should place the parties in the same position that they would have been in had the annulled marriage not taken place. 46 Ohio Jurisprudence 3d (1994) 163, Family Law, Section 353. Property interests should thus be returned to each party to whatever extent is possible. Baldwin's Ohio Domestic Relations Law, *supra*, at 178.[2].

The decision of the magistrate below clearly shows that his recommendation for property distribution was based on "the principles set out in Ohio Revised Code Section 3105.171" and applicable caselaw thereunder. That provision, by its terms, applies only to divorce and legal separation proceedings. It does not apply to annulment proceedings. Therefore, appellant's first and second assignment of error, as well as the first cross-assignment of error, challenging the distribution of property, are hereby sustained. The cause will be remanded for further consideration by the trial court in light of those principles previously discussed herein.

We now turn to the second cross-assignment of error, wherein cross-appellant argues that the lower court erred in not awarding her attorney fees. Her argument here is twofold. First, cross-appellant contends that she was entitled to attorney fees under R.C. 3105.18(H). We disagree. This statute, again, applies only in the context of "divorce or legal separation proceedings."

---

**2.** Because of these sorts of problems which are inherent in annulment cases, parties are usually advised to bring an action in divorce instead. See Baldwin's Ohio Domestic Relations Law (1992) 178, Section 7.06(C).

There is nothing in the statute which makes it applicable to an annulment proceeding. Cross-appellant also contends that she is entitled to attorney fees under general principles which allow for them to be awarded against someone who has perpetrated a fraud or acted in bad faith. It is true that counsel fees may be awarded in cases involving fraud. See, generally, *Peckham Iron Co. v. Harper* (1884), 41 Ohio St. 100; *Roberts v. Mason* (1859), 10 Ohio St. 277, at paragraph two of the syllabus. The magistrate below found that appellant had made "a fraudulent representation" that he was a widower prior to his wedding. However, no further finding was made beyond that. It is settled law that attorney fees can only be awarded in fraud cases where punitive, or exemplary, damages would be appropriate. See *Saberton v. Greenwald* (1946), 146 Ohio St. 414, 32 O.O. 454, 66 N.E.2d 224, at paragraph two of the syllabus. This requires a case of gross or malicious fraud or something showing a very corrupt state of affairs. *Logsdon v. Graham Ford Co.* (1978), 54 Ohio St.2d 336, 339, 8 O.O.3d 349, 351, 376 N.E.2d 1333, 1335. A bare case of fraud does not warrant exemplary damages, *id.*, and thus would not warrant an award of attorney fees. The magistrate below found that there was fraud perpetrated by appellant in this case but made no finding that it was gross or malicious fraud. Accordingly, an award of attorney fees would not have been appropriate. Cross-appellant does not challenge the trial court's failure to find that the fraud was gross or malicious, and we find nothing in our own review of the record to convince us that it was. Similarly, there was no finding that cross-appellant acted in bad faith, and we are not persuaded from the evidence adduced below that the absence of such a finding was error.

▮▮▮▮ There is yet another consideration which buttresses our conclusion on this point. Cross-appellant cites no authority of law to support the proposition that an award of attorney fees is *mandatory* where fraud or bad faith is involved. We note that the decision to award attorney fees has typically been relegated to the sound discretion of the trial court and would not be overturned absent an abuse of that discretion. *Babka v. Babka* (1992), 83 Ohio App.3d 428, 435, 615 N.E.2d 247, 251–252; *Gross v. Gross* (1990), 64 Ohio App.3d 815, 821, 582 N.E.2d 1144, 1147–1148; *Ranz v. Ranz* (1988), 51 Ohio App.3d 66, 69, 554 N.E.2d 142, 146. An abuse of discretion is more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242, 1248–1249; *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665, 666–667; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1141–1142. When applying the abuse of discretion standard, reviewing courts are admonished that they are not free to merely substitute their judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181, 1183–1185; *Berk v. Matthews* (1990), 53 Ohio St.3d

161, 169, 559 N.E.2d 1301, 1308–1309. This is a difficult standard to meet, and, considering the relative assets of the parties in these proceedings, we find no abuse of discretion in not awarding attorney fees below. The second cross-assignment of error is, accordingly, overruled.[3]

Appellant's two assignments of error, as well as the first cross-assignment of error, having been sustained, the judgment will be reversed in part and remanded for further proceedings consistent with this opinion in regard to distribution of property.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PETER B. ABELE, P.J., and HARSHA, J., concur.

---

3. There is nothing in our decision, however, which would prevent the trial court from awarding attorney fees on remand if the situation was deemed appropriate.