[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JOURNAL ENTRY
On September 4, 2002, this Court released Karson v. Ficke, 9th Dist. No. 01 CA 3252-M, 2002-Ohio-4528. The printed version of that opinion contains an error. Specifically, in the text of the opinion, the trial court is incorrectly referred to as the Summit County Court of Common Pleas, when it should have been identified as the Medina County Court of Common Pleas.
"The Summit County Court of Common Pleas" is hereby deleted from the opinion and is replaced with "the Medina County Court of Common Pleas."
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Charlotte E. Karson, her son, Jeffrey A. Karson, and Jeffrey's wife, Janet L. Karson, ("the Karsons") have appealed from a decision of the Medina County Court of Common Pleas. We affirm.
 I.
{¶ 2} Charlotte Karson owned a piece of property with two houses on it. She transferred one of the residences to her son, Jeffrey Karson, as a wedding present.[1] Sometime in 1994, Charlotte contracted with Appellee, George Ficke d.b.a. Woodcrafter A.E.I ("Ficke"), to remodel her residence and perform various construction work upon those premises. Several months later, Jeffrey also contracted with Ficke to remodel his residence. In addition to the initial agreements between these parties, there were many changes, additions, and revisions along the way. The agreements were largely oral. Eventually, the Karsons became displeased with the progress and/or the quality of Ficke's work and advised him to discontinue work on the project.
{¶ 3} Thereupon, the Karsons filed a complaint against Ficke, and Ficke, in turn, counterclaimed against the Karsons. The matter proceeded through discovery, amendments, dismissals of claims, and, ultimately, to trial upon the following issues: (1) The Karsons claimed Ficke knowingly presented false and fraudulent affidavits to Karsons' lending institutions, resulting in the wrongful release of funds to Ficke, and sought $200,000 in compensatory damages, $400,000 in punitive damages, and attorney fees; and (2) Ficke counterclaimed that the Karsons wrongfully refused to allow him to complete his work on the properties, and sought $116,300.16 in damages from Charlotte Karson and $17,363.50 in damages from Jeffrey Karson.
{¶ 4} At the conclusion of all the evidence, the Karsons moved for a directed verdict on Ficke's counterclaim. The trial court denied the motion and allowed all issues to go to the jury.
{¶ 5} Following deliberations, the jury returned a verdict on the fraud claim in favor of the Karsons, awarding compensatory damages in the amount of one dollar and punitive damages in the amount of $6960.98. The jury declined to award attorney fees. As to Ficke's counterclaim, the jury found in favor of Jeffrey Karson, but against Charlotte Karson in the amount of $28,000.
{¶ 6} The trial court journalized an order pursuant to the verdict on September 4, 2001, and the Karsons filed a notice of appeal on September 7, 2001. Thereafter, — albeit by minutes — the Karsons filed a motion for judgment notwithstanding the verdict ("JNOV") and/or a new trial. The trial court denied the motion on September 19, 2001, and the Karsons filed a second notice of appeal from the denial of the motion on September 21, 2001. This appeal followed.
 II.
{¶ 7} We begin by noting that the order journalizing the verdict of the jury and entering judgment in this case is a final appealable order. See Cleveland v. Trzebuckowski (1999), 85 Ohio St.3d 524, 526. The filing of a notice of appeal from that order divested the trial court of jurisdiction except upon issues not inconsistent with the jurisdiction of the appellate court to review, affirm, modify or reverse the judgment.State ex rel. State Fire Marshal v. Curl (2000), 87 Ohio St.3d 568, 570. The Karsons' motion for JNOV and/or new trial was not such an issue as it was directed to the substance of the jury verdict and the issues raised on appeal. Therefore, the trial court lacked jurisdiction to consider the motion and potentially alter the final order. Harkai v. Scherba (2000),136 Ohio App.3d 211, 215.
{¶ 8} Jurisdiction to consider such motions may be conferred on the trial court, but only through an order of the reviewing court. SeeHoward v. Catholic Social Serv. of Cuyahoga Cty., Inc. (1994),70 Ohio St.3d 141, 147; Ford v. Tandy Transp., Inc. (1993),86 Ohio App.3d 364, 383-384. The Karsons did not request a stay of the appellate proceedings, nor did they request this appellate court to confer jurisdiction on the trial court to consider its motion for JNOV and/or new trial. Consequently, the trial court was without jurisdiction to rule upon that motion. Therefore, the Karsons' second, fourth, and sixth assigned errors as well as the portion of the first assigned error which relates to that purported order, are overruled. We next consider the remaining assignments of error.
 III.
{¶ 9} In the balance of their first assignment of error, the Karsons argue that the trial court should have granted their motion for directed verdict as to Ficke's counterclaim. This is so, they contend, because there was no evidence adduced at trial as to damages resulting from the Karsons' refusal to permit Ficke to complete work beyond the original contract, as opposed to evidence regarding damages on the original agreement.
{¶ 10} According to Civ.R. 50(A)(4), a motion for directed verdict is granted if, after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." The "reasonable minds" test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party. Civ.R. 50(A)(4); Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 69.
{¶ 11} A review of the record discloses that the trial court allowed the pleadings to be amended to conform to the evidence presented at trial.[2] In response to the Karsons' motion for directed verdict at the conclusion of the evidence, the trial judge stated: "[I]n light of the fact that the Court wishes to try to do justice in this matter, the Court is going [to] permit the pleadings to conform to the evidence in this case and permit the matter to go to the jury[.]" In addition, the judgment entry that journalized the jury verdict indicates that "the Court permitted [Ficke] to conform his first claim for relief to an account claim based upon the evidence submitted at trial[.]"
{¶ 12} Civ.R. 15(B) provides that issues not raised by the pleadings may be tried by "express or implied consent of the parties[.]" The rule also provides:
 {¶ 13} "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." Civ.R. 15(B). See, also, Standen v. Smith
(Feb. 20, 2002), 9th Dist. No. 01CA007886, appeal not allowed (2002), 96 Ohio St.3d 1438.
{¶ 14} In their brief to this Court, the Karsons have not indicated that they objected during trial to Ficke's presentation of evidence on the question of damages resulting from the original contract. See App.R. 12(A)(2). Nor have they indicated that the evidence actually presented at trial fails to substantively support the verdict of the jury. See Civ.R. 50(A)(4). Consequently, the trial judge acted within his discretion in allowing the pleadings to conform to the evidence presented and the trial court did not err in denying Karsons' motion for directed verdict. The balance of the Karsons' first assignment of error is, therefore, without merit.
{¶ 15} In the Karsons' third assignment of error, they assert that the one-dollar award for compensatory damages is against the manifest weight of the evidence.
{¶ 16} When reviewing the weight of the evidence, this court applies the same test in civil cases as it does in criminal cases.Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." Id., citing State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
{¶ 17} The Karsons assert that a mechanic's lien for $6960.98 was placed on the property, that Ficke falsely stated he paid all his subcontractors in full, and that he received funds from the bank, but did not use those funds to remove the lien. Jury interrogatories indicated that the jury found Ficke's conduct to be fraudulent and determined that punitive damages were warranted. The jury then awarded compensatory damages in the amount of one dollar and punitive damages in the amount of $6960.98, the precise amount of the mechanic's lien on the Karsons' property.
{¶ 18} In essence, the Karsons contend that the jury could not possibly have found that Ficke was liable for fraud regarding the mechanic's lien and then not have granted them compensatory damages in the amount of the mechanic's lien.
{¶ 19} The trial court instructed the jury in this case, that the measure of compensatory damages "is the actual out-of-pocket loss to these plaintiffs." The purpose of punitive damages, on the other hand, is not to compensate a plaintiff, but to punish a defendant for wrongful conduct and deter such conduct in the future. Moskovitz v. Mt. SinaiMed. Ctr. (1994), 69 Ohio St.3d 638, 651.
{¶ 20} The record in this case contains evidence, which if credited by the trier of fact, would indicate that Jeffrey Karson was aware of the outstanding lien, but nevertheless requested that Ficke sign the waiver. There was also evidence in the record, which, if credited by the trier of fact, would support a finding that the lien was "invalid" or that Ficke had otherwise "overpaid" the lienholder. Furthermore, the jury also heard evidence that the same lienholder was subsequently hired by the Karsons to perform additional or corrective work on their homes and that he dissolved another lien which he held on Charlotte's home. There was, finally, a great deal of documentary and testimonial evidence from both parties regarding the agreements, changes to agreements, quality of workmanship, billings issued and payments made.
{¶ 21} As the primary fact finder, the jury was entitled to evaluate the credibility of the witnesses and weigh the evidence presented to them. A reviewing court will not disturb a jury's assessment of damages without an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive or inadequate. Moskovitz,69 Ohio St.3d at 655. Otherwise, the assessment of damages is "thoroughly within the province of the jury[.]" Id.
{¶ 22} To set aside a jury award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the jury verdict is so disproportionate as to shock reasonable sensibilities, cannot be reconciled with the undisputed evidence in the case, or indicates that the jury lost its way in assessing compensatory damages by failing to include all items making up the plaintiff's claim.Bailey v. Allberry (1993), 88 Ohio App.3d 432, 437.
{¶ 23} The mere size of an award, while relevant, is insufficient to establish the existence of passion or prejudice. Jeanne v. HawkesHosp. of Mt. Carmel (1991), 74 Ohio App.3d 246, 257. Instead, "[t]here must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury."Shoemaker v. Crawford (1991), 78 Ohio App.3d 53, 65.
{¶ 24} The Karsons have not pointed to any such evidence in the record. The jury in this case may simply have chosen to punish Ficke for his wrongful conduct through the imposition of punitive damages, but disbelieved the Karsons concerning the extent of their actual damages.
{¶ 25} Furthermore, to the extent that the Karsons are suggesting an inconsistency exists between the general verdict and interrogatories, we observe that they failed to move for resubmission of the verdict and interrogatories to the jury. A party raising inconsistencies in a jury verdict must do so before the jury is discharged or risk waiving the objection. See Romp v. Haig (1995), 110 Ohio App.3d 643, 647, citingHaehnlein v. Henry (1987), 41 Ohio App.3d 233; O'Connell v. Chesapeake Ohio RR. Co. (1991), 58 Ohio St.3d 226, 229. Where the answer to an interrogatory is inconsistent with a general verdict, the trial court may grant judgment in accordance with the answers, return the matter to the jury for further consideration of its answers and verdict, or may order a new trial. See Civ.R. 49(B). By raising the objection after the jury is dismissed, the party has "unnecessarily limited the court's options."Romp, 110 Ohio App.3d at 647. "If such tactically placed objections were allowed, parties could circumvent the jury if they felt that the jury would not return a favorable verdict." Id.
{¶ 26} The record in this case indicates that the Karsons had an opportunity to poll the jury or request that the jury be reinstructed. In the absence of doing so, we are unable to determine whether the jury misunderstood the instructions or simply found that the Karsons suffered minimal actual damages.
{¶ 27} Accordingly, under the circumstances of this case, we are unable to conclude that the jury's award was either inadequate or against the manifest weight of the evidence. The third assignment of error is without merit.
{¶ 28} In their fifth assignment of error, the Karsons argue that the jury's failure to award attorney fees was against the manifest weight of the evidence. Karsons claim that since punitive damages were awarded, they may also recover reasonable attorney fees.
{¶ 29} While Ohio law permits attorney fees to be awarded in cases where punitive damages are awarded, the Karsons cite no legal authority to support the proposition that an award of attorney fees is mandatory in such cases. The decision to award attorney fees has typically been relegated to the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. See Liming v. Liming
(1996), 117 Ohio App.3d 617, 622. "An abuse of discretion is more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. When applying the abuse of discretion standard, reviewing courts are admonished that they are not free to merely substitute their judgment for that of the trial court." (Citations omitted.) Id.
{¶ 30} Furthermore, once again, to the extent that the Karsons are arguing that the jury verdict is inconsistent, their failure to raise the objection before the jury was discharged precludes them from raising the issue on appeal.
{¶ 31} Upon review of the record before us, we find that the Karsons have failed to demonstrate an abuse of discretion. The fifth assignment of error is overruled.
{¶ 32} The Karsons' seventh assignment of error alleges that the jury's verdict on Ficke's counterclaim is against the manifest weight of the evidence. The Karsons contend that even assuming the trial court properly permitted Ficke's counterclaim to go before the jury on the theory of breach of contract, the evidence did not support the verdict. They maintain that it was "incongruous" for the jury to find in favor of Jeffrey Karson, but against Charlotte Karson. The Karsons assert that such a conclusion would require a finding that Ficke was "partially truthful. "
{¶ 33} Charlotte Karson and Jeffrey Karson owned separate residences and each made separate agreements with Ficke. Their individual contracts included both written and oral portions, with additions made along the way. Charlotte Karson and Jeffrey Karson each testified personally, and numerous exhibits regarding charges and payments were presented to the trier of fact. The jury was free to choose which witnesses to credit and how to interpret the many pieces of documentary evidence before them. The Karsons have not demonstrated a logical inconsistency in the jury finding that one party's damages were different than the other. Based upon the record, we cannot say that the jury clearly lost their way. The seventh assignment of error is overruled.
 IV.
{¶ 34} The Karsons' seven assignments of error are overruled. The judgment of the trial court is affirmed.
SLABY, P.J. CONCURS, CARR, J. CONCURS IN JUDGMENT ONLY.
[1] The residence was later deeded back to Charlotte Karson.
[2] Upon reviewing the record in this case, we feel compelled to observe that the 315-page transcript of this case includes an incredible number of typographical, spelling and grammatical errors, as well as entire sentences of complete "gibberish." For example, see p. 128: "Once again, I'll ask you what does that particular testimony as to getting the dry-waller paid have stood with a reason on there property?" See, also, p. 129: "Now, you have asked can way floods yes asked that he knew or didn't know what the amount was that needed to be paid to the dry-waller." See, also, p. 165: "One don't me got a to me forward the next step in the process was for him to come out and get a measured drawing and get the angels all right and this is his first attempt at a measured drawing or the first step in preparing a true set of blue prints for us to work from." The second volume of transcript does not have a cover page indicating the case name or number. See App.R. 9(B)(8). It is unfortunate that an "official court reporter" would produce such a document. It is also unfortunate that the counsel reviewing this transcript did not have the record corrected. See App.R. 9(E).