DECISION
{¶ 1} This appeal arises from a dispute over ownership of 328 acres of land in Harrison County, Ohio. The trial court granted partial summary judgment in favor of plaintiff-appellee, Kenneth B. Welsh, M.D. The three defendants-appellants in this matter are Anita L. Leist, individually, and in her capacity as administrator of the separate estates of Alva F. Cavin and Luella G. Cavin. We will hereinafter, for purposes of clarity, refer to Ms. Leist by name when referring to her as an individual party, to the appropriate estate where Ms. Leist is a party in her capacity as administrator, and to the defendants collectively as "appellants."
 {¶ 2} While the facts of this case are not simple and are often in dispute, a fair background can be given using only those facts that appear to be accepted by all parties. The land in question (the "Snow Bowl property") belonged for many years to the family of the late Alva Cavin. After succeeding to ownership, Alva and his first wife, Luella Cavin, attempted to develop the property as a ski resort. The venture ultimately failed, and Alva and Luella defaulted on a Small Business Administration ("SBA") loan in connection with the business. The federal government obtained title to the property after foreclosure.
 {¶ 3} The Cavins had maintained a friendship with appellant, a substantially younger man, from the time Dr. Welsh was an adolescent. His family owned the farm next to the Snow Bowl property on which the Cavins lived. When the SBA after foreclosure offered the Snow Bowl property for sale at auction in 1977, the Cavins provided the necessary funds for Dr. Welsh to purchase the property in his own name. A deed conveying the property from the SBA to Dr. Welsh was recorded on September 20, 1977. The sale of the property did not fully satisfy the Cavins' debt to the SBA, which retained a substantial deficiency judgment against them for the shortfall.
 {¶ 4} Dr. Welsh executed a promissory note to Luella Cavin dated November 29, 1976, in the amount of $7,010, without interest. This note contains two inconsistent notations, one stating that the note is due one year after issuance, the other stating that the note is due "on demand" Dr. Welsh executed a second promissory note in favor of Luella Cavin, dated June 16, 1977, in the amount of $62,957.78, without interest. The terms of this note state that it is due upon demand The sum of the two notes is equal to $69,967.78, the price of the Snow Bowl property purchase by Dr. Welsh in 1977. Dr. Welsh's affidavit and deposition state that the first note was in connection with Luella's advancement of the funds for a down payment on the property, and the second was in connection with Dr. Welsh's payment of the balance of the auction purchase price. There is no indication in the record that either note was ever paid.
 {¶ 5} Dr. Welsh subsequently executed, on January 16, 1978, two quitclaim deeds to the Snow Bowl property, one naming Alva Cavin as sole grantee, the other naming Luella Cavin as sole grantee. The deeds also conveyed certain fixtures and equipment associated with the ski resort operation. Neither deed was recorded during the lifetime of the grantees.
 {¶ 6} After the failure of the ski resort, Alva and Luella moved from Harrison County to Columbus, Ohio. Luella died in 1993. Not long after his wife's death, Alva met Ms. Leist at a church function in Tucson, Arizona, where Alva kept a winter home. Alva Cavin and Anita Leist were married in Tucson in June 1996. Alva and Ms. Leist traveled at least once to Ohio. During this trip, Ms. Leist saw the Snow Bowl property, and discussed it with Alva. Alva died in November 1996, and Ms. Leist was named administrator of his estate. In that capacity, she disposed of various assets owned by Alva, including a residence in Columbus, Ohio. The SBA, acting upon its existing deficiency judgment, levied upon the proceeds of the sale, and ultimately accepted the entire net proceeds of the Columbus house sale in satisfaction of the judgment.
 {¶ 7} As Ms. Leist went through her late husband's belongings in their home in Tucson, she discovered the deeds and promissory notes connected with the Snow Bowl property. She eventually mailed the quitclaim deed naming Alva as grantee to the Harrison County Recorder, and the deed was duly recorded on November 17, 1998. This recordation triggered the present legal dispute over title to the land
 {¶ 8} In addition to the ambiguous fact pattern set forth above, it must be noted that the procedural history of this case before the trial court is rather convoluted. Filings of complaints, answers, amended complaints, and amended answers are interspersed with intervening motions for summary judgment, a decision and entry sustaining in part and denying in part Dr. Welsh's motion for summary judgment rendered by the trial court on January 21, 2000, a subsequent decision and entry on July 29, 2002 appearing to adopt the substance of the January 21, 2000 decision and ruling on various pending motions, and finally a trial court decision rendered on October 29, 2002 reiterating most of the substance of the January 21, 2000 decision and constituting the final appealable order in this case. Only the more essential filings will be described below.
 {¶ 9} Dr. Welsh commenced this action by filing a complaint against Ms. Leist individually and the Estate of Alva Cavin setting forth claims to quiet title, for ejectment, slander of title, unjust enrichment, and declaratory judgment.
 {¶ 10} The pleadings thereafter reflect for a period some confusion as to the status of the respective parties.
 {¶ 11} The appellants asserted various counterclaims in their answer to the initial complaint. Ms. Leist and the Estate of Alva Cavin answered and counterclaimed to have the title to the property found exclusively to belong to the Estate of Alva Cavin, and additionally counterclaimed, in the alternative, that if the Estate of Alva Cavin was not found to be the owner of the Snow Bowl property, then Dr. Welsh owed the Estate of Alva Cavin the face amount of the two promissory notes, for which the Estate of Alva Cavin was the ultimate beneficiary through the Estate of Luella Cavin. Ms. Leist and the Estate of Alva Cavin further counterclaimed for monetary damages for Dr. Welsh's failure to maintain improvements on the property, and made a reciprocal claim for slander of title. The answer also asserted various defenses to Dr. Welsh's claims, including a right of setoff in the amount of the unpaid promissory notes against any damages that might be awarded to Dr. Welsh.
 {¶ 12} The Estate of Luella Cavin, although not initially named in Dr. Welsh's complaint, joined in the initial answer filed by Ms. Leist and the Estate of Alva Cavin as a "counterclaim defendant," claiming that, should Dr. Welsh be found to have title to the property, the Estate of Luella Cavin should be given a purchase money mortgage on the Snow Bowl property equal to the purchase price advanced by Luella to Dr. Welsh, plus interest from the date of purchase. The Estate of Luella Cavin also brought a counterclaim for slander of title, and the prayer for relief contained in the joint answer appears to include the Estate of Luella Cavin as a party claiming title to the property, implying that the two estates and Ms. Leist are bringing competing or alternative claims in the action to quiet title.
 {¶ 13} The trial court noted the awkward status of the Estate of Luella Cavin as a counterclaiming party that was not named as a defendant in the initial complaint, and entered an order striking it as party and ordering Dr. Welsh to file an amended complaint naming all necessary parties. The ensuing amended complaint filed by Dr. Welsh added the Estate of Luella Cavin as an additional party defendant on all claims. This placed the estate as a conventionally postured defendant and counterclaimant, and allowed all defendants to properly file answers and counterclaims. These were essentially identical in the case of Ms. Leist individually and Alva's estate, but differed somewhat for Luella's estate. The new answer on behalf of the Estate of Luella Cavin modified the purchase money mortgage counterclaim to one for an equitable vendor's lien, maintained the counterclaim for slander of title, and clarified that the Estate of Luella Cavin sought fee simple title to the property.
 {¶ 14} As these pleadings clarified the respective positions of the parties, plaintiff and all defendants renewed earlier motions for summary judgment or dismissal.
 {¶ 15} In their cross-motions for summary judgment, the parties presented diametrically opposed interpretations and explanations for the above series of notes and purported conveyances. By affidavit and deposition testimony, Dr. Welsh stated that the Cavins never intended to either collect on the notes or obtain a fee simple title to the Snow Bowl property after Dr. Welsh had purchased it at auction in 1977. Dr. Welsh explained that the Cavins had asked him to purchase the property from the SBA at auction because of their attachment to the property and desire to maintain use and income from the property during their lifetimes. Because Dr. Welsh did not have the funds to purchase the property, Luella Cavin furnished the necessary amount. Dr. Welsh then executed two promissory notes to Luella Cavin, for the sole purpose of giving Luella Cavin a claim against Dr. Welsh's estate in the unlikely event that Dr. Welsh predeceased the Cavins. The 1978 deeds were executed with the same intent, with the understanding among the parties that Dr. Welsh was not conveying any interest in the property beyond the informal life estate he had agreed to grant the Cavins, and that the deeds merely represented additional security for the Cavins in case Dr. Welsh predeceased both of them.
 {¶ 16} Dr. Welsh's testimony was that, from 1977 to 1996, the Cavins received income from sale of equipment, timber, and mineral leases, while Dr. Welsh paid the property taxes, Ohio Department of Natural Resources fees, and insurance. Dr. Welsh's understanding was that with the death of Alva Cavin in 1996, the agreement between the parties had been completed, any interest of the Cavins in the property was terminated, and he retained his fee simple ownership.
 {¶ 17} The theory presented by Ms. Leist individually and on behalf of the estates offers a completely different interpretation of the parties' actions. According to Ms. Leist's deposition testimony and affidavits regarding statements made by Alva Cavin during his lifetime, as well as an affidavit from one Charles Clark, a person who also related statements made by Alva Cavin, Alva Cavin always represented the Snow Bowl property as his to dispose of as he pleased, and toward the end of his life Alva repeatedly stated that he intended to sell the property. The ambivalent actions (or inaction) of the Cavins after receiving the notes and deeds executed by Dr. Welsh are explained, under appellants' theory, by the fact that, because of the remaining deficiency judgment held by the SBA, the Cavins did not wish to hold recorded title to the Snow Bowl property for fear of further attachment proceedings. They therefore advanced the funds to Dr. Welsh to purchase the property at auction, then had Dr. Welsh execute the two quitclaim deeds to convey title back to the Cavins. Holding the quitclaim deeds, the Cavins never demanded payment on the two promissory notes.
 {¶ 18} Adopting Dr. Welsh's interpretation of the facts, the trial court granted summary judgment for Dr. Welsh on all claims and counterclaims, with the exception of his claim for slander of title. On this last issue, the court found that material issues of fact remained requiring trial.
 {¶ 19} This appeal has been separately briefed by appellants: one brief has been filed on behalf of Ms. Leist personally and in her capacity as administrator of the Estate of Alva Cavin, and one brief is on behalf of Ms. Leist as administrator of the Estate of Luella Cavin. The briefs present common assignments of error:
 Assignment of Error Number One
The court erred when it determined that Luella G. Cavin offered to put up the money for the purchase of the property on the condition that she and Alva F. Cavin have the use of and income from the property during their lifetimes.
 Assignment of Error Number Two
The court erred in applying Kniebbe v. Wade, (1954) 161 Ohio St. 294 to the execution and delivery of two quitclaim deeds to the same parcel of land to two different grantees.
 Assignment of Error Number Three
The court erred in not finding a purchase money trust, "resulting trust," when Plaintiff-Appellee admits that Luella G. Cavin provided the purchase money for the real property or in not imposing an equitable vendor's lien in favor [of] defendant-appellant estate of Luella G. Cavin for the amount of the purchase price paid by Luella G. Cavin.
 Assignment of Error Number Four
The court erred by finding that plaintiff-appellee did not have the requisite intent to transfer the real property by:
A. Not applying the long standing legal presumption that a deed executed in conformity with O.R.C. § 5301.01 is conclusive of the facts stated therein, and the grantor of such a deed cannot assert rights contrary to the terms of the deed without first securing reformation or cancellation of the deed by clear and convincing evidence.
B. Not applying the statute of frauds, O.R.C. § 1335.05, to plaintiff-appellee's claims when plaintiff-appellee's sole evidence to limit the express terms of a quitclaim deed is plaintiff-appellee's conclusionary [sic] affidavit given after the death of both grantees.
C. Erroneously relying on Plaintiff-Appellee's parol, self Serving and Conclusionary [sic] statements.
 Assignment of Error Number Five
The court erred in granting summary judgment in favor of plaintiff-appellee against defendants-appellants on all issues other than plaintiff-appellee's claim for slander of title.
 Assignment of Error Number Six
The trial court erred in determining that appellant-defendant, estate of Alva F. Cavin's set-off recoupment (based upon Luella Cavin's advancement of the purchase money to plaintiff-appellee and plaintiff-appellee's execution of two promissory notes) was barred by the statute of limitations and because the execution and delivery of the promissory notes did not arise out of the same transaction as the plaintiff-appellee's claim for relief.
 Assignment of Error Number Seven
The court erred in not applying the statute of limitations, O.R.C. § 2305.04, to plaintiff-appellee's claims against the appellant-defendant, Estate of Luella G. Cavin when plaintiff took no action to dis-affirm the quitclaim deeds within 21 years after execution and delivery of the quitclaim deeds by Plaintiff-Appellee.
 Assignment of Error Number Eight
The court erred in not applying the limitations of O.R.C. § 2117.06
(B) and (C) to plaintiff-appellee's claims against defendant-appellant, Estate of Luella G. Cavin.
 Assignment of Error Number Nine
The court erred in not granting Appellant-Defendant, Estate of Luella Cavin's Civil Rule 12(b) motion to dismiss on plaintiff-appellee's slander of title claim.
 {¶ 20} The present matter was decided on summary judgment by the trial court. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v.Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 21} An appellate court's review of summary judgment is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; Bardv. Society Natl. Bank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440,445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. See Bard,
supra.
 {¶ 22} While many issues arise in this case, certainly the central one is whether the execution and delivery of the quitclaim deeds to the Cavins effected a valid conveyance of the Snow Bowl property to them in 1978. Dr. Welsh asserted, and the trial court accepted, that the simultaneous execution and delivery of deeds to the same property made out to different grantees rendered both deeds void ab initio, and that in addition to this, the circumstances of the delivery of the deeds and the conduct of the parties thereafter evinced no intent to convey the property from Dr. Welsh to either Alva or Luella Cavin. This is the issue presented in appellants' first, second, and fourth assignments of error.
 {¶ 23} "A deed must be delivered to be operative as a transfer of ownership of land, for delivery gives the instrument force and effect. * * * An effective delivery, however, also requires an acceptance on the part of the grantee, coupled with the mutual intent of the parties to pass title to the property described in the deed." Candlewood Lake Assoc. v.Scott (Dec. 27, 2001), Franklin App. No. 01AP-631. (Citations omitted.) "In Ohio, a deed does not have to be recorded to pass title. Whether or not recorded, a deed in Ohio passes title upon its proper execution and delivery, so far as the grantor is able to convey it." Wayne Bldg. Loan of Wooster v. Yarborough (1967), 11 Ohio St.2d 195, 212. Possession of the deed by the grantee creates a non-conclusive presumption of valid delivery, Shurtz v. Colvin (1896), 55 Ohio St. 274, which may be rebutted by the party contesting the effect of the deed. Pomeroy v. Union TrustCo. (1929), 29 Ohio L.R. 225.
 {¶ 24} As to the standard of proof to be borne by a person challenging the effect of a deed, there is some uncertainty. While the standard of proof is not generally an issue in reviewing summary judgment because the requirement that the evidence be viewed most favorably for the non-moving party removes most need to assess weight and probity, this question does permeate many of the arguments of the parties on other issues. Appellants, understandably, would prefer to place the burden upon Dr. Welsh of rebutting the presumed validity of the deed by clear and convincing evidence. There is some authority for this position: "A deed executed in the correct form is presumed to be valid and will not be set aside except upon clear and convincing evidence." Henkle v. Henkle
(1991), 75 Ohio App.3d 732, 735. "The presumption of validity attaching to a deed which appears upon its face to have been executed in due form can only be overcome by clear and convincing proof, and the burden of sustaining such burden of proof is on the person challenging the validity of such deed." Weaver v. Crommes (1959), 109 Ohio App. 470, 475. These cases, however, involve challenges to the facial validity of the instrument itself, alleging fraud in execution or incapacity in the grantor. Unfortunately, the cases we must rely on for guidance in the issues before us, that is, cases involving factual issues regarding the delivery of the deed or the intent of the parties at the time of execution, do not specify the standard of proof applied. In the absence of authority to the contrary, we will assume that the typical standard of the preponderance of the evidence, rather than the higher standard of clear and convincing evidence, is the one to be applied.
 {¶ 25} The argument that the deeds are void ab initio due to their simultaneous execution is based upon the case of Kniebbe v. Wade (1954),161 Ohio St. 294. In the present matter, this is a potentially compelling argument because, if accepted, it neatly circumvents most of the disputed questions of fact in the case, it being accepted by all parties that the two deeds were executed and delivered more or less contemporaneously. This argument will accordingly be addressed first.
 {¶ 26} In Kniebbe, a husband and wife simultaneously executed mutual warranty deeds to each other for real property that they already owned as tenants in common. The deeds were not recorded, but were kept by the couple in their home, apparently with the understanding that upon the death of one, the survivor would take all the property by the appropriate deed, the second deed then becoming superfluous. Each deed purported to convey an undivided half interest in each parcel concerned. The arrangement was apparently intended to avoid inclusion of the real estate interest in the will of the first-deceased person.
 {¶ 27} The Kniebbe court held that the arrangement did not constitute a valid conveyance of the property. The court first examined all the conventional factors to be considered in assessing the effect of a deed:
It is fundamental that, in order for a deed to be operative as a transfer of ownership of land or an interest or any estate therein, there must be a delivery of the instrument. It is the delivery that gives the instrument force and effect. Delivery imports transfer of possession or the right to possession of the instrument with the intent to pass title as a present transfer. It is essential to delivery that there not only be a voluntary delivery, but there must also be an acceptance thereof on the part of the grantee, with the mutual intention of the parties to pass title to the property described in the deed. * * *
It is the general rule that there is a presumption of delivery arising from the possession of a deed by the named grantee. In the instant case, the wife had possession of the deeds after the decedent's death and caused them to be recorded. But the mere manual transfer of a deed does not constitute delivery unless it is coupled with an intent of apresent, immediate and unconditional conveyance of title.
Id. at 297. (Emphasis sic.) (Citations omitted.)
 {¶ 28} The court's ruling in Kniebbe is based partly upon these broader circumstances, beyond the mere occurrence of simultaneous delivery of mutual deeds. The court noted that delivery was problematical since the couple retained mutual control over the deeds, it was possible that each reciprocal grantor could be shown to have retained possession of the executed deed, and there was no present intent to part with title. The court also noted that both grantors had continued to exercise acts of ownership of the property purported to be conveyed. Id. at 298. These are the classic factors discussed by courts assessing the effect of delivery of a deed. The Kniebbe court was certainly persuaded, however, that the simultaneous and mutual nature of the deeds executed between tenants in common precluded a finding of intent to pass ownership at the time of delivery:
* * * The deeds in question in this case were intended to be testamentary in character, and there was no giving of the deeds by the husband and the acceptance thereof by the wife with a present, immediateand unconditional conveyance of title from one to the other.
* * *
* * * Since simultaneous deeds of community property by husband and wife to each other, placed in escrow to be delivered to the survivor on the death of either, take effect presently, if at all, and since they negative one another, there can be no effective delivery.
Id. at 299. (Emphasis sic.)
 {¶ 29} While Kniebbe contains much useful language on the effect of deeds, unrecorded deeds, delivery of deeds, and real estate conveyances generally, we find that that aspect of the holding regarding simultaneous execution of reciprocal deeds as part of an estate planning scheme is distinguishable from the case before us, and does not compel judgment for Dr. Welsh. Both factual and legal distinctions are plentiful: Kniebbe
involved warranty deeds; the case before us involves quitclaim deeds.Kniebbe involved simultaneous and mutual conveyances between persons already holding title as tenants in common; the case before us involves two simultaneous conveyances by a single person holding title to two different grantees. Finally, the deeds in this case were unequivocally delivered to the grantees, at least insofar as the grantor separated them from his possession and placed them in the hands of the grantees, who retained them beyond the grantor's access. All of these distinctions makeKniebbe, we find, less than binding on the facts before us.
 {¶ 30} The deeds in Kniebbe, as the court noted, were self-negating: that is, if both deeds were recorded, the husband and wife would have been left in the same position as they were prior to the transfers, or each simultaneously to own the entire property. In the present case, while the two deeds might have given rise to a priority contest between the Cavins, the case involves quitclaim deeds, not warranty deeds. A quitclaim deed conveys no more than whatever title the grantor held at the time of granting the deed. Jonke v. Rubin (1959),170 Ohio St. 41, syllabus. As such, the execution of a quitclaim deed does not raise some of the implications of the execution of a warranty deed, which purports to convey a specific estate, R.C. 5302.05, containing specific covenants of the status of the title being granted. The holder of the quitclaim deed in the present case deemed last in time would hold nothing, since Dr. Welsh had nothing to convey at the time the second deed was executed. In re Estate of Ault (1992), 80 Ohio App.3d 399,403. While the execution of simultaneous quitclaim deeds in the present case might be one factor weighed by a court in ascertaining the intent of the parties as to whether a present, immediate, and unconditional conveyance of title was intended, it is not preclusive upon such a determination in the manner that the simultaneous and mutual warranty deeds executed by the husband and wife, upon property they already held as tenants in common, was found to be in Kniebbe. We therefore find that the trial court erred in finding that Kniebbe compelled summary judgment for Dr. Welsh and precluded a material issue of fact in the present case.
 {¶ 31} Although we have found that the particular rule set forth inKniebbe is not, of itself, conclusive and binding on the present facts, the factors enumerated therein that might be considered to rebut the effect of the deed may yet be considered to determine whether the parties intended to convey the property as set forth in the deeds.
 {¶ 32} The evidence on what the party intended to convey, and when they intended to convey it, is at best mixed in the present case. The trial court's decision fundamentally errs in that it accepts without contradiction or question the version of events set forth in Dr. Welsh's deposition and affidavits, without examining or giving any weight to the contrary explanations or assertions contained in the affidavits and deposition testimony presented in opposition to summary judgment by appellants. Dr. Welsh stresses on appeal that this evidence in part consists of hearsay evidence based on the statements of the decedent, who obviously is no longer available to provide his version of the events. These statements, however, are at least arguably admissible under Evid.R. 804(B)(5), which provides an exception to the hearsay rule for statements made by a decedent where his estate is a party. The trial court never ruled on the admissibility of these statements, nor in fact examined their content at all. In combination with the bare existence of the deeds and notes, the presumptive validity of the deed itself, and certain facts and circumstances freely admitted by Dr. Welsh, we find that the evidence presented by appellants in opposition to summary judgment raises a material issue of fact regarding the intent of the parties in executing the deeds.
 {¶ 33} The basic premise advanced by Dr. Welsh was that the deeds were intended to convey nothing, but to serve as security if Dr. Welsh predeceased the Cavins: "I made and gave the 1978 deeds to the Cavins with the understanding that I was not conveying any interest in the property, other than a right to the use of the property and the income from the property during their lifetimes." (Sept. 30, 1999 Affidavit of Dr. Welsh.) This statement is inherently contradictory, appearing as it does to assert that Dr. Welsh simultaneously conveyed either nothing or a life estate, neither of which comports with the language of the deeds. "A deed's language is conclusively presumed to express the parties' intention absent `uncertainty' in the language employed." 37 RobinwoodAssoc. v. Health Indus., Inc. (1988), 47 Ohio App.3d 156, 157. The deeds in the present case were duly executed and unquestionable and signed by Dr. Welsh, and unquestionably delivered into the physical possession of the Cavins. Although the Cavins did not record either deed, recordation, of itself, is not conclusive of the intent to transfer. Yarborough,
supra.
 {¶ 34} This court is not in the position to resolve a credibility contest between the two versions of events proposed by the parties; we are, however, in a position to establish that a credibility contest exists. Certainly, evidence is present to support Dr. Welsh's version of events: his own testimony that he paid taxes, Ohio EPA fees, and maintenance on the property is imperfectly rebutted, if at all, and he gives his own account of relations between himself and the Cavins, and the intentions of the parties in executing the deed and notes. Contradictory evidence, however, exists: the deposition testimony of Ms. Leist describes her husband as asserting the belief that the property was his to sell if he so desired. This is supported by the affidavit of Charles Clark, a friend of Alva Cavin, regarding Alva Cavin's statements. The existence of the two deeds themselves, the promissory notes, and the undisputed fact that Luella Cavin provided the funds to purchase the Snow Bowl property, all could be weighed by a finder of fact to support the inference that a present intent to convey the Snow Bowl property existed at the time that Dr. Welsh executed the deeds. Under these circumstances, there remain material issues of fact that preclude summary judgment in favor of Dr. Welsh.
 {¶ 35} Because we find that Kniebbe does not mandate judgment for Dr. Welsh, and that there remain material issues of fact on the question of the effect of the deeds, we find that the trial court erred in granting summary judgment for Dr. Welsh and finding that he was the owner of the Snow Bowl property. Appellants' first, second, and fourth assignments of error are accordingly sustained.
 {¶ 36} Appellants' third assignment of error contends that the trial court erred in finding that a purchase money trust, resulting trust, or equitable vendor's lien in favor of Luella Cavin could not be found based upon the facts of the transaction and her advancement of the purchase price to Dr. Welsh. Without making any determination on the underlying merits of these claims, our ruling with respect to appellants' second and fourth assignments of error also mandates finding that a material issue of fact remains on these claims as well. Appellants' third assignment of error is accordingly sustained.
 {¶ 37} Appellants' sixth assignment of error alleges that the trial court erred in finding that the defense of set-off or recoupment, based upon Luella Cavin's advancement of the purchase money as evidenced by the notes and Dr. Welsh's own statements that she did so, was barred by the statute of limitations.
 {¶ 38} This raises one aspect of the trial court's summary judgment decision that is not disputed by appellants: the trial court's determination that the statute of limitations precluded an action for payment on the promissory notes themselves. Appellants have not contested this determination by the trial court, and it will be affirmed. Appellants argue, however, that the notes and the underlying transaction could still give rise to a right of set-off or recoupment should a monetary judgment be granted in favor of Dr. Welsh, even if an affirmative action to recover on the notes is time-barred. Appellants rely on Riley v. Montgomery (1984), 11 Ohio St.3d 75, in which the Ohio Supreme Court addressed comparable time-barred claims presented as defenses: "A claim of a defendant which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common-law theory of recoupment, when the claim arises out of the same transaction as the plaintiff's claim for relief, and when it is offered only to reduce the plaintiff's right to relief." Id. at paragraph one of the syllabus. "The general rule is that statutes of limitations bar affirmative counterclaims, but do not affect claims offered in defense or recoupment, arising from the same transaction that forms the basis for the plaintiff's complaint." Id. at 78. The availability of recoupment and the question of whether the notes arise out of the same transaction remain material questions of fact in the present case. Even if collection on the notes is time-barred, a determination that appellants do not contest, the notes serve as evidence that could support a claim for recoupment. The trial court accordingly erred in granting summary judgment for Dr. Welsh on appellants' defense of recoupment, and appellants' sixth assignment of error is sustained.
 {¶ 39} Appellants' seventh, eighth, and ninth assignments of error assert that the trial court erred in failing to grant the Estate of Luella Cavin's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim with respect to Dr. Welsh's slander of title, unjust enrichment, ejectment, and declaratory judgment claims against the Estate of Luella Cavin. This motion invokes the statutes of limitations set forth in R.C.2305.04 (title to real property), R.C. 2305.11 (slander of title), and R.C. 2117.06 (claims against an estate) to bar Dr. Welsh's claims.
 {¶ 40} In order for a court to dismiss, under Civ.R. 12(B)(6), a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. O'Brien v. Univ. Comm.Tenant's Union, Inc. (1975), 42 Ohio St.2d 242. In this case, determination of the applicability of the cited statutes of limitation requires the court to look beyond the averments of the complaint, and we accordingly find that dismissal under Civ.R. 12(B)(6) is inappropriate.
 {¶ 41} Appellants' motion to dismiss also sought, in the alternative, to convert the motion to one for summary judgment, and the issues regarding the applicability of the statutes of limitation are also argued under that standard in this appeal. In doing so, appellants are essentially seeking a reversal on the basis that the trial court improperly denied summary judgment in favor of the Estate of Luella Cavin. Denial of a motion for summary judgment is not a final, appealable order. State ex rel. Overmyer v. Walinski (1966), 8 Ohio St.2d 23; Leluxv. Chernick (1997), 119 Ohio App.3d 6. Appellants' seventh, eighth, and ninth assignments of error are accordingly overruled.
 {¶ 42} Appellants' fifth assignment of error is essentially a catch-all rubric assigning general error on the part of the trial court in granting summary judgment on the specific issues and claims addressed in the other assignments of error. This assignment of error is accordingly sustained and overruled to the extent required by our disposition of the other assignments of error.
 {¶ 43} In summary, appellants' first, second, third, fourth, and sixth assignments of error are sustained, appellants' seventh, eighth, and ninth assignments of error are overruled, and appellants' fifth assignment of error is sustained in part and overruled in part. The judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded for further proceedings in accordance with this opinion.
Judgment affirmed in part, reversed in part and case remanded.
Bowman and Klatt, JJ., concur.