ROMP et al., Appellees,

v.

HAIG, Appellee; Bauer Company, Appellant.

[Cite as *Romp v. Haig* (1995), 110 Ohio App.3d 643.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940268.

Decided Aug. 23, 1995.

*White, Getgey & Meyer Co., L.P.A.,* and *David P. Kamp,* for appellees Kenneth and Debbie Romp.

*Matre & Cuni Co., L.P.A.,* and *Thomas L. Cuni, Jr.,* for appellee D. Thomas Haig.

*Cohen, Todd, Kite & Stanford* and *Susan J. Hovey,* for appellant Bauer Company.

---

HILDEBRANDT, Judge.

Defendant-appellant, the Bauer Company ("Bauer"), appeals from the judgment of the Hamilton County Court of Common Pleas, following a jury trial in which Bauer was found liable to plaintiffs-appellees, Kenneth and Debbie Romp ("the Romps"), on their claims of fraudulent inducement, punitive damages and attorney fees. The jury also found Bauer liable to defendant-appellee, D. Thomas Haig ("Haig"), on his cross-claim against Bauer which sought indemnification for the verdict against Haig and in favor of the Romps on their claims of fraudulent inducement and breach of the implied covenant of good faith and fair dealing. Bauer filed a motion for judgment notwithstanding the verdict on the adverse verdict on the cross-claim, which the trial court denied.

Bauer raises two assignments of error alleging, respectively, that the trial court erred in overruling its motion for a directed verdict on the Romps' claim for punitive damages and attorney fees and in overruling its motion for judgment notwithstanding the verdict on Haig's cross-claim against it. Neither assignment of error is well taken.

The record discloses that Haig owned and operated Haig Printing, a sole proprietorship. In April 1991, Haig decided he wanted to retire and listed his business with Bauer. Bauer contacted the Romps because they had previously sought to purchase a printing company through Bauer.

Bauer and Haig provided the Romps with information jointly as well as independently at various times throughout the negotiation process. The Romps utilized an accountant, Elias Mabjish ("Mabjish"), to review the financial information provided by Haig and Bauer. Relying on the information provided by Haig and Bauer and the review of the information by Mabjish, the Romps decided to purchase the business from Haig. Within a week, the Romps discovered that the business lacked a sufficient customer base to remain operational.

In its first assignment of error, Bauer argues that the trial court should have granted a directed verdict on the Romps' claim for punitive damages and attorney fees because there was no evidence adduced at trial of either malice or the aggravated or egregious fraud required for punitive damages and attorney fees. This assignment of error is not well taken.

The record demonstrates that the trial court instructed the jury that they could find Bauer liable for punitive damages and attorney fees if they found by clear and convincing evidence that Bauer's acts or failures to act demonstrated malice or aggravated or egregious fraud, oppression, or insult. Civ.R. 50(A)(4) states:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In Ohio, the malice required for the award of punitive damages consists of "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. While the elements of egregious or aggravated fraud have not yet been specifically set forth by the Ohio Supreme Court, according to *Logsdon v. Graham Ford Co.* (1978), 54 Ohio St.2d 336, 8 O.O.3d 349, 376 N.E.2d 1333, such fraud requires more than a showing of fraud or constructive fraud. Aggravated fraud requires evidence of maliciousness, deliberateness, grossness, or wantonness. *Id.* at 339, 8 O.O.3d at 351–352, 376 N.E.2d at 1335. To determine what egregious or aggravated fraud is in comparison to a "bare case of fraud or constructive fraud," the Second District Court of Appeals in *Newkirk v. Precision Automotive, Inc.*

(Mar. 3, 1992), Montgomery App. No. 12498, unreported, 1992 WL 41832, looked to the dictionary definitions of "egregious" to conclude that "[a]ccording to Webster's and American Heritage Dictionary, respectively, egregious is defined as meaning conspicuously bad: flagrant, or outstandingly bad; blatant; outrageous. Webster's Ninth New Collegiate Dictionary (1990) 398; The American Heritage Dictionary (1976) 228." *Id.* See, also, *Grodhaus v. Burson* (1991), 71 Ohio App.3d 477, 594 N.E.2d 717 ("egregious" is defined as "conspicuous for bad quality and taste").

Haig told Maureen Bauer, the owner of Bauer, that business at Haig Printing had fallen off by fifty percent and had not increased. Ms. Bauer not only failed to disclose this information to the Romps, but also misrepresented this information both on the cash flow statement and on the information sheet prepared for the Romps. The Romps relied on these statements, in part, due to their relationship of trust, however misguided, with Bauer from their previous attempt at purchasing a printing company.

In a case under similar circumstances, *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, a truck manufacturer made a series of conscious misrepresentations about the delivery date of trucks to its customer for the purpose of inducing the customer to forgo negotiations with competitors. As a result of the fraud, the customer lost his business. The court held that the evidence "showed convincingly a continuous course of egregious conduct by the defendant * * *." *Id.* at 245, 12 OBR at 325–326, 466 N.E.2d at 888.

Upon evaluating the evidence in this case in a light most favorable to the Romps, we conclude that reasonable minds could differ whether Bauer's misrepresentations, including the material misrepresentations in the cash flow sheet and the information sheet that consciously omitted data regarding the fifty-percent downswing in business, constituted malice or aggravated or egregious fraud. Therefore, Bauer's first assignment of error is overruled.

In support of its second assignment of error, Bauer asserts that because the jury failed to follow the trial court's instructions in reaching a general verdict in favor of Haig on his cross-claim, it is entitled to judgment notwithstanding the verdict. We disagree.

The trial court instructed the jury as follows:

"If you find against Haig because of improper actions taken by Bauer as Haig's agent and further find that Haig himself did not act improperly, you should grant Haig's cross-claim against Bauer."

To support its position, Bauer argues that the general verdict on the cross-claim is both contradictory and irreconcilable with interrogatories nine and

fourteen, and with the general verdict in favor of the Romps against Haig for fraud and breach of the implied covenant of good faith and fair dealing. Bauer argues, in essence, that the jury could not possibly have found that Haig was liable for wrongdoing to the Romps and then have granted his cross-claim against Bauer if the jury followed the trial court's cross-claim instructions which precluded a finding for Haig unless the jury found that he had not acted improperly.

Haig argues that Bauer failed to raise the inconsistencies until after the trial court discharged the jury. Haig asserts that under Ohio law, a party making a motion under Civ.R. 49 must do so before the jury is discharged. See *Haehnlein v. Henry* (1987), 41 Ohio App.3d 233, 535 N.E.2d 343. The Ohio Supreme Court implicitly recognized this rule in *O'Connell v. Chesapeake & Ohio RR. Co.* (1991), 58 Ohio St.3d 226, 569 N.E.2d 889. See *Greynolds v. Kurman* (1993), 91 Ohio App.3d 389, 632 N.E.2d 946.

While Haig's argument mischaracterizes Bauer's argument as a Civ.R. 49 claim, its principles have been applied under procedural circumstances similar to those presented in the case before us. In *Kenney v. Fealko* (1991), 75 Ohio App.3d 47, 598 N.E.2d 861, an appellant demonstrated not only an inherent inconsistency between interrogatories and a part of the general verdict, but also an inherent inconsistency between separate parts of the verdict with regard to the apportionment of damages.

The court in *Kenney v. Fealko, supra*, limited Civ.R. 49 to govern only the relationship between the answers to interrogatories and the specific verdict to which they relate. The court agreed with the appellant that the jury verdicts were "simply illogical" due to their irreconcilable inconsistencies, independent of the interrogatories. However, the court then applied essentially the same analysis that the court in *Haehnlein v. Henry, supra*, followed, and required parties either to raise the issue of inconsistencies before the jury is discharged, or to waive the objection. See, also, *Greynolds v. Kurman, supra; Osterloh v. B.F. Goodrich Co.* (Oct. 17, 1991), Franklin App. No. 91AP–382, unreported, 1991 WL 224188; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411.

The rationale for such a rule is clear. When a jury returns two inconsistent verdicts, a party can object, just as a party can object when a jury returns a verdict inconsistent with corresponding interrogatories. A trial court has a number of options at its disposal at that time, including the option of allowing the jury to deliberate further to clear up any ambiguities that may have arisen. However, if the objection is allowed after the jury is dismissed, the party has unnecessarily limited the court's options. If such tactically placed objections were allowed, parties could circumvent the jury if they felt that the jury would not return a favorable verdict.

In this case, the transcript shows that prior to the dismissal of the jury, the trial court asked all parties whether they had any questions about the verdicts or interrogatories that could be answered by the jurors before they were dismissed. The trial court emphasized: "I don't want anybody coming back saying that there was some answer that didn't make sense or anything like that."

Counsel for Mabjish raised an inconsistency regarding an interrogatory, and the trial court took a short recess to handle that issue and to allow counsel for each party time to look over the answers to interrogatories and verdicts. At any point during that time, Bauer could have raised the inconsistencies, but instead remained silent. Only after the court dismissed the jury did Bauer raise the inconsistencies, seeking a judgment notwithstanding the verdict.[1]

The trial court could have granted a judgment notwithstanding the verdict if reasonable minds could only have found in favor of Bauer's position after construing the evidence most strongly in favor of Haig, *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19, or judgment notwithstanding the verdict or a new trial if it found that the cross-claim verdict was illogical under the *facts* of the case, *Miller v. Scott* (App.1952), 66 Ohio Law Abs. 308, 117 N.E.2d 179.

However, there is no way to determine from the record whether the jury misunderstood the agency instructions when it held Haig liable for fraud in the inducement and breach of the implied warranty of good faith and fair dealing, or whether it misunderstood the instructions on the cross-claim as Bauer asserts. In light of the fact that Bauer failed to object to any inconsistencies prior to the dismissal of the jury, we overrule Bauer's second assignment of error.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., and SUNDERMANN, J., concur.

---

1. Unlike *O'Connell v. Chesapeake & Ohio RR. Co., supra,* in which the court determined that the failure to object to inconsistent answers to interrogatories constituted plain error based on the long length of the trial and the difficulty in discovering the inconsistencies without a lengthy examination and comparison of the interrogatory forms, the appellant in this case had ample opportunity to object to the alleged inconsistencies before the jury had been dismissed. This is not one of those rare cases in which the plain error doctrine should be invoked.