ARROW MACHINE COMPANY, LTD., Appellant and Cross–Appellee,

v.

ARRAY CONNECTOR CORPORATION, Appellee and Cross–Appellant.

[Cite as *Arrow Machine Co., Ltd. v. Array Connector Corp.*, 197 Ohio App.3d 598, 2011-Ohio-6513.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2010–L–115.

Decided Dec. 19, 2011.

Porter, Wright, Morris & Arthur, L.L.P., and David C. Tryon, for appellant and cross-appellee.

Weston Hurd, L.L.P., and Daniel A. Richards, for appellee and cross-appellant.

DIANE V. GRENDELL, Judge.

{¶ 1} Plaintiff-appellant and cross-appellee, Arrow Machine Co., Ltd., appeals the judgment entry of the Lake County Court of Common Pleas, denying its motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial. The issues before this court are as follows: (1) whether the jury's verdicts ought to have been set aside as mutually inconsistent, (2) whether Arrow Machine was entitled to judgment as a matter of law, and (3) whether the trial

court erred by instructing the jury, in the course of its deliberations, that certain conduct did not constitute a breach of contract. For the reasons that follow, we answer these propositions in the negative and, thus, affirm the judgment of the court below.

{¶ 2} On July 31, 2008, Arrow Machine filed suit against defendant-appellee and cross-appellant, Array Connector Corp., for breach of contract. The complaint alleged that Arrow Machine is an Ohio limited-liability company with its principal place of business in Mentor, Ohio, and Array Connector is a Florida corporation, with its principal place of business in Miami, Florida. It was further alleged that in September 2007, Arrow Machine entered into a purchase-and-supply agreement with Array Connector, "in the city of Mentor, Ohio," whereby "[Arrow Machine] was to manufacture and sell to [Array Connector] certain goods; and [Array Connector] agreed to purchase from [Arrow Machine] minimum quantities of such goods at specified prices during the three (3) year term of the Agreement." Arrow Machine claimed that Array Connector breached the agreement by failing "to purchase the minimum quantities of goods" and by attempting "to unilaterally terminate the Agreement, without cause." [1]

{¶ 3} On April 29, 2009, Array Connector filed its answer, affirmative defenses, and counterclaim. As the basis for its counterclaim, Array Connector alleged that Arrow Machine was in breach of contract "by failing to fulfill the delivery requirements set forth within * * * the Agreement and by producing parts that were defective and/or non-conforming with the purchase order requirements."

{¶ 4} The case was tried before a jury.

{¶ 5} The following testimony and evidence was presented at trial.

{¶ 6} On September 14, 2007, John Habe IV, as president of Arrow Machine, and Robert Correa, as materials director for Array Connector, signed a purchase and supply agreement. The purpose of the agreement was to establish a "buy/sell business relationship" between the parties. The agreement began on September 12, 2007, and was to continue in effect until December 31, 2010. An attachment to the agreement provided the pricing for four sizes of machine parts in quantities of 500 to 12,000 and for a "production lead time" of 12 weeks. There was a specified "minimum quarterly quantity" of 500 pieces of each of the four sizes. The agreement contained the following relevant provisions:

---

1.  On October 22, 2008, the trial court dismissed the complaint for lack of personal jurisdiction under Ohio's long-arm statute. That decision was subsequently reversed by this court in *Arrow Machine Co., Ltd. v. Array Connector Corp.*, 11th Dist. No. 2008–L–161, 2009-Ohio-1439, 2009 WL 806917.

{¶ 7} "This agreement in no way guarantees the purchase of specific volumes of all or any item listed but does guarantee that the volume will be between the minimum and maximum listed on Attachment A.

\* \* \*

{¶ 8} "Seller [Arrow Machine] agrees to an on time shipping performance of 98% defined as no more than 5 days early and 0 days late to the agreed schedule.

" \* \* \*

{¶ 9} "Failure to meet the requirements of this agreement will subject the agreement to possible termination at the discretion of the buyer [Array Connector]. This contract may be terminated by the buyer without liability to the buyer for failure by the seller to fulfill any or all agreement requirements."

{¶ 10} On December 3, 2007, Array Connector placed a purchase order for 12,000 pieces of each part. According to the terms of the agreement and the 12–week lead time set forth in the attachment, the parts were to be delivered between February 20, and 25, 2008. The purchase order specified that certain quantities of each part were needed "ASAP."

{¶ 11} Periodic shipments of parts were made by Arrow Machine beginning in December 2007 and continuing through March 28, 2008. Arrow Machine's president, Habe, testified that Arrow Machine shipped parts as requested by Array Connector, through a senior buyer, Alexis Rone. Habe testified that Rone would contact Arrow Machine with a request for a given number of parts, typically for immediate shipment. These requests were made periodically and at varying intervals, both before and after the period between February 20 and 25. Correa, testifying on behalf of Array Connector, admitted that it was "standard practice" for Rone to contact Arrow Machine and request parts, as needed, on a periodic basis.

{¶ 12} Between December 2007 and March 2008, there were several occasions when Array Connector returned parts to Arrow Machine as defective. Some of these parts were determined to be conforming and some of these parts were corrected by Arrow Machine and reshipped to Array Connector. Ultimately, all parts were accepted by Array Connector.

{¶ 13} Array Connector did not make a purchase order for the second quarter (April to June) of 2008. During this time, Habe advised Array Connector that pursuant to the agreement, a minimum quantity of parts had to be ordered each quarter. There was also some discussion between the parties about reducing the rate to be charged for orders of smaller quantities.

{¶ 14} On June 23, 2008, Correa sent Habe the following e-mail: "After a considerable amount of time and effort trying to figure out a solution to your

price increase; we have no choice but to terminate our agreement dated 9/14/0[7] due to Array and Arrow's failure to agree on unit pricing."

{¶ 15} Correa testified that his primary reason for terminating the agreement was Arrow Machine's failure to deliver parts by February 25, 2008, as required by the agreement. In particular, there were two shipments of parts after February 25, 2008. In addition to late shipments, problems with quality were a significant issue. Correa testified that he attempted to negotiate for reduced pricing of small quantities as a way to continue with the agreement despite the quality and delivery issues. Correa admitted that he never advised Habe that he would terminate the agreement due to delivery or quality issues, although he did express his displeasure at the two late deliveries.

{¶ 16} Habe testified that he was under the impression, from speaking with Rone, that Array Connector was not ordering parts because it did not need them. Habe confirmed that he was not made aware of Array Connector's claims regarding late deliveries and quality until about a year after filing suit.

{¶ 17} On June 9, 2010, the jury returned a verdict against both parties with respect to their breach-of-contract claims, i.e., neither party had proven the other party to be in breach.

{¶ 18} Following the delivery of the verdict, the trial court put the following on the record:

{¶ 19} "For the record, I wanted to put on the record that the jurors had a question during their deliberations. They initially sent one question back to the Court. I wasn't clear what it was they were asking so I did send Mr. Roberts back in to ask them to clarify that question. And they sent this question out, I will read it at this time for the record.

{¶ 20} "The question was: 'If Array accepts shipments early, is this a breach of contract?' The Court brought the parties in after I got the question. It wasn't clear to the Court for certain which party the jurors were asking would be possibly in breach by accepting shipments early.

{¶ 21} "So the Court sent the question back to them, 'Is this a breach of contract by which party?' The jurors responded saying, 'By Array.'

{¶ 22} The Court, after discussing with counsel for the parties said, 'No.' That it would not be a breach by Array if they accepted the shipments early. I don't know if either party wants to be heard, put anything on the record in that regard."

{¶ 23} Counsel for Arrow Machine responded that he was "a little concerned about responding to it at all upon reflection." He added, "One of my concerns

was that it creates a negative implication that if the answer is no as to Array, the answer would be yes as to Plaintiff."

{¶ 24} On June 24, 2010, Arrow Machine filed a motion for judgment notwithstanding the verdict or in the alternative, a motion for a new trial. The basis for the motion for judgment notwithstanding the verdict, pursuant to Civ.R. 50, was that reasonable minds, based on the evidence presented at trial, could only conclude that Array Connector had failed to perform its obligations under the agreement without justification and that, as a result, Arrow Machine had suffered damages. The basis for the motion for new trial, pursuant to Civ.R. 59(A)(6) and (7), was that the verdict was against the manifest weight of the evidence and contrary to law.

{¶ 25} On September 7, 2010, the trial court entered a judgment entry denying Arrow Machine's motion.

{¶ 26} On September 30, 2010, Arrow Machine filed a notice of appeal. On appeal, Arrow Machine raises the following assignments of error:

{¶ 27} "[1.] The trial court erred in denying appellant's Motion for Judgment Notwithstanding the Verdict."

{¶ 28} "[2.] The trial court erred in denying appellant's Alternate Motion for New Trial."

{¶ 29} "[3.] The trial court erred by instructing the jury during jury deliberations that defendant's actions were not a breach of the agreement during jury deliberations [sic]."

{¶ 30} On October 7, 2010, Array Connector filed a notice of cross-appeal. On cross-appeal, Array Connector raises the following assignment of error:

{¶ 31} "[1.] If this court determines that any error by the trial court resulted in an inconsistent verdict which merits the granting of any of Arrow's assignments of error, th[e]n the court should remand both Arrow's Complaint and Array's Counterclaim to the trial court for a new trial."

{¶ 32} "[N]ot later than fourteen days after entry of judgment [following a jury trial], a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned[,] such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion." Civ.R. 50(B); *Freeman v. Wilkinson* (1992), 65 Ohio St.3d 307, 309, 603 N.E.2d 993 (Civ.R.50(B) "only applies in cases tried by jury").

{¶ 33} When considering a motion for judgment notwithstanding the verdict, "[t]he evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the

party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334. "In considering a motion for judgment notwithstanding the verdict, a court does not weigh the evidence or test the credibility of the witnesses." *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 504 N.E.2d 19, syllabus; *Posin* at 275 ("[n]either the weight of the evidence nor the credibility of the witnesses is for the court's determination"). Thus, the question is whether there is sufficient evidence regarding a particular issue for the trial court to submit the issue to the jury for determination. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 280 N.E.2d 896, paragraph four of the syllabus.

{¶ 34} The question of whether a party is entitled to judgment notwithstanding the verdict is a question of law and, thus, requires a de novo review. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, at ¶ 23.

{¶ 35} Arrow Machine contends that it proved all the affirmative elements of a claim for breach of contract and that there was no evidence to the contrary.

{¶ 36} As instructed by the trial court, the jury, in order to find for Arrow Machine, was required to find "by the greater weight of the evidence that the parties entered into a contract, that [Array Connector] breached the contract by either failing to purchase the minimum quantities of goods after March 2008, or by terminating the agreement without reason allowed in the contract, and that [Arrow Machine] was not in material breach of the contract at the time of [Array Connector's] breach and had substantially performed its duties due under the contract at the time of [Array Connector's] breach."

{¶ 37} It is undisputed that the parties entered into a contract and that Array Connector terminated that agreement in June 2008. It is also undisputed that Arrow Machine did not comply with the agreement's requirement of 98 percent on-time shipping in accordance with the 12–week lead time. Under the terms of the agreement, this failure provides Array Connector with the discretion to terminate the agreement.

{¶ 38} Arrow Machine contends that it was not in material breach and/or had substantially performed its duties under the agreement on the grounds that (1) Array Connector accepted the purportedly untimely shipments and (2) the parties' course of conduct modified the agreement with respect to delivery. Contrary to Arrow Machine's position, the evidence presented at trial was not so overwhelming as to preclude reasonable minds from reaching different conclusions on the issues of the parties' course of conduct and Array Connector's acceptance of nonconforming goods.

**{¶ 39}** According to Ohio's version of the Uniform Commercial Code, Array connector would be barred from "any remedy," which includes repudiation of the Agreement, if it failed to notify Arrow Machine of the breach "within a reasonable time." R.C. 1302.65(C)(1). The Section Notes to R.C. 1302.65 provide, "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched" and need not "include a clear statement of all the objections that will be relied on by the buyer." Moreover, the notification necessary to preserve the buyer's remedies "need only be such as informs the seller that the transaction is claimed to involve a breach, and thus [open] the way for normal settlement through negotiation." *Id.*

**{¶ 40}** Likewise, the provisions governing installment contracts provide that when the nonconformity constitutes a breach of the whole agreement, "the aggrieved party reinstates the contract if he accepts a non-conforming installment without seasonably notifying of cancellation." R.C. 1302.70(C). The Section Notes here explain that "a buyer who accepts a non-conforming installment which substantially impairs the value of the entire contract should properly be permitted to withhold his decision as to whether or not to cancel pending a response from the seller as to his claim for cure or adjustment."

**{¶ 41}** In the present case, Arrow Machine made two untimely deliveries of parts to Array Connector, on February 28 and March 28, 2008. Thereafter, Array Connector did not place any further purchase orders with Arrow Machine. While Array Connector never expressly notified Arrow Machine that it would terminate the agreement due to these breaches, it did express its dissatisfaction with Arrow Machine's failure to deliver in accord with the Agreement's 12–week lead time.

**{¶ 42}** Correa testified that he had "multiple phone calls" with Arrow Machine regarding delivery times in which he had expressed his displeasure with the late deliveries. Correa described the following conversation, as occurring with Habe:

**{¶ 43}** "Based on Arrow's inability to meet the shipment schedule of 12,000 per quarter, we agreed—if we could, rather than order 12,000 from John Habe or Arrow Machine of each part number, can we order a smaller quantity to satisfy our customer's needs. And his response was, 'No. If you order a smaller quantity your pricing is going to go up.' So my response to that was, 'But really not my fault if you guys aren't making the date, everything is late. I want to kind of help out in this situation here, order smaller quantities, which you're able to supply us during the first contract.' Why would I pay a penalty or higher price for them not being able to produce the material?"

**{¶ 44}** In light of this testimony and the fact that Array Connector ceased issuing purchase orders, reasonable minds could conclude that Arrow Machine had been put on notice that it was in breach of the agreement's terms, and,

despite the acceptance of the nonconforming shipments, Array Connector preserved its right to terminate the contract. Cf. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 54, 537 N.E.2d 624 (notice may be inferred and that "notice may be sufficient under the statute despite the fact that the notice does not specifically allege a breach of the contract").

{¶ 45} Similarly, the evidence that Correa attempted to accommodate late deliveries by negotiating for reduced pricing while not issuing further purchase orders precludes the granting of a directed verdict in Arrow Machine's favor based on a course of performance and/or waiver of the contractual delivery time.

{¶ 46} Regarding course of performance, the relevant provisions of the Revised Code provide: "Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement. * * * [S]uch course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance." R.C. 1302.11(A) and (C).

{¶ 47} The evidence that Arrow Machine shipped the untimely orders at Array Connector's request and that these orders were accepted are "relevant" to the meaning of the agreement and the issues of waiver and/or modification; they are not determinative of these issues. Correa testified that he did not know whether Rone had actually requested shipments after February 25, 2008, but if she had, she was without authority to do so. Moreover, Correa affirmed that he expected Arrow Machine to comply with the agreement by delivering all the parts within the 12–week lead time provided therein. Finally, as noted above, Correa complained of the late deliveries directly to Habe. Given this record, the question of whether Array Connector acquiesced in late deliveries and/or a modification of the agreement to accommodate such deliveries was a disputed factual issue about which reasonable minds could differ. Thus, Arrow Machine was not entitled to a directed verdict on the basis of course of performance.

{¶ 48} The first assignment of error is without merit.

{¶ 49} In the second assignment of error, Arrow Machine argues that the trial court erred by denying its motion for a new trial.

{¶ 50} As with a motion for judgment notwithstanding the verdict, a motion for a new trial "shall be served not later than fourteen days after the entry of the judgment." Civ.R. 59(B). A new trial may be granted where "[t]he judgment is not sustained by the weight of the evidence" and/or "[t]he judgment is contrary to law." Civ.R. 59(A)(6) and (7).

{¶ 51} "Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a

new trial may be reversed only upon a showing of abuse of discretion by the trial court." *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 262 N.E.2d 685, paragraph one of the syllabus. However, "[w]here a new trial is granted by a trial court, for reasons which involve * * * a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law." *Id.*, paragraph two of the syllabus.

{¶ 52} The basis of Arrow Machine's argument that the judgment is against the weight of the evidence and the law is the alleged inconsistency of the jury's verdict. Because the evidence that the parties had a binding contract is undisputed, Arrow Machine contends that Array Connector's failure to perform its obligations under the contract constitutes a breach, excusable only if Arrow Machine were already in material breach. The jury, however, found neither party to be in breach, which, according to Arrow Machine, is inconsistent with the evidence.

{¶ 53} It has been held that "Ohio courts generally have intimated that material inconsistency within a general verdict in a civil action requires a reversal on appeal of the judgment, entered upon the verdict." (Citations omitted.) *Kaye Bros. Pet Supply Co. v. Calvon Corp.*, 8th Dist. No. 42083, 1980 WL 355381, at *2; *Kenney v. Fealko* (1991), 75 Ohio App.3d 47, 53, 598 N.E.2d 861 ("a trial court can order either a new trial or judgment notwithstanding the verdict when the jury renders conflicting verdicts on multiple claims or causes of action"). "However, relief from the verdicts will only be granted in this type of situation when the claims are so interrelated that the conflicting verdicts are illogical, given the facts of the case." *Kenney* at 54.

{¶ 54} Arrow Machine's argument fails, in the first instance, because a party claiming that jury verdicts are legally inconsistent is "required * * * to raise the issue of inconsistencies before the jury is discharged, or to waive the objection." *Romp v. Haig* (1995), 110 Ohio App.3d 643, 647, 675 N.E.2d 10; *Kenney* at 54–55 ("[t]he critical point is that the inconsistent verdicts constituted an error which could have been corrected if the issue had been properly brought to the trial court's attention"). Here, there is no indication that Arrow Machine raised the argument that the verdicts were logically inconsistent prior to the jury's dismissal.

{¶ 55} Moreover, the allegedly conflicting verdicts are not illogical, per se. The jury's verdicts reflect the logical conclusion that neither party satisfied its burden of proving, "by the greater weight of the evidence," that the other party was in breach.[2] In the absence of jury interrogatories, Arrow Machine cannot

---

2. In this respect, the present case is distinguishable from those situations in which the verdicts were found to be legally inconsistent. See, e.g., *Kaye Bros.*, 1980 WL 355381, at *3

demonstrate with certainty that the verdicts are logically inconsistent. Cf. *Redmond v. Socha* (2005), 216 Ill.2d 622, 646, 297 Ill.Dec. 432, 837 N.E.2d 883 ("because the law demands that a plaintiff meet the burden of proving every necessary element of his claim by a preponderance of the evidence, a jury may find against both the plaintiff and the counterplaintiff in a negligence action, even when the evidence suggests that the sole cause of the accident was the negligence of either or both parties").

{¶ 56} The second assignment of error is without merit.

■ {¶ 57} In the third and final assignment of error, Arrow Machine argues that the trial court erred by responding to the question raised by the jury during its deliberations, i.e., "if Array accepts shipments early, is this a breach of contract?" The trial court responded, "[N]o * * * it would not be a breach by Array if they accepted the shipments early." Arrow Machine contends that by responding to this query, the trial court invaded the jury's province to decide the ultimate issues of the case.

■ {¶ 58} The Ohio Supreme Court has often held that a trial court's charge to the jury "ought not only to be correct, but to be so adapted to the case and so explicit as not to be misconstrued or misunderstood by the jury in the application of the law to the facts as they may find them from the evidence." *Little Miami RR. Co. v. Wetmore* (1869), 19 Ohio St. 110, paragraph three of the syllabus; *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 482 N.E.2d 583. This injunction has been similarly applied to a trial court's responses to questions posed by the jury. *Gallagher v. Cooper* (1984), 14 Ohio St.3d 41, 43–44, 471 N.E.2d 468. A party, however, waives the right to challenge a trial court's response by failing to object. *Id.* at 44; *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965 ("defense counsel raised no objection to the trial court's response to the jury question, and the court acted within the scope of its discretion").

{¶ 59} In the present case, there is no evidence in the record that counsel for Arrow Machine objected to the trial court's response to the jury. Following the discharge of the jury, the trial court gave the parties the opportunity to "put anything on the record" regarding the response given to the jury. Counsel for Arrow Machine stated that he was "a little concerned about responding to it at all upon reflection," since "it creates a negative implication that if the answer is no

("where, in a joint action by an insured and his subrogated insurer for damages, the jury returns a verdict for one plaintiff but not the other, and this finding is inconsistent with the evidence, * * * the verdict is invalid and must be set aside on appeal"); *Miller v. Scott* (1952), 66 Ohio Law Abs. 308, 117 N.E.2d 179 (jury found in favor of both parties where the sole contested issue was whether the contract was performed "in a workmanlike manner").

as to Array, the answer would be yes as to Plaintiff." Counsel offered nothing further with respect to the issue of the trial court's response.

{¶ 60} Arrow Machine claims that this exchange "suggests" that counsel had protested responding to the jury's question when posed. We disagree. The trial court stated that it had discussed the matter with the parties prior to responding. If counsel for Arrow Machine had objected to or argued against responding, it was incumbent upon counsel to make a record of his opposition when given the opportunity to do so.

{¶ 61} The third assignment of error is without merit.

{¶ 62} In its sole assignment of error on cross-appeal, Array Connector argues that if this court were to reverse the judgment and remand for a new trial, it was entitled to a new trial as well on its counterclaim. As we are affirming the trial court's judgment, this assignment of error is rendered moot.

{¶ 63} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas denying Arrow Machine's motion for judgment notwithstanding the verdict or in the alternative, a motion for a new trial, is affirmed. Costs are taxed against appellant.

Judgment affirmed.

TRAPP and WRIGHT, JJ., concur.