[Cite as *Berryhill v. Khouri*, 2014-Ohio-5041.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100173**

---

**MARY BERRYHILL**

PLAINTIFF-APPELLANT

vs.

**RUSTOM R. KHOURI, ET AL.**

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-721073

**BEFORE:** Kilbane, J., Rocco, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** November 13, 2014

**APPELLANTS**

Mary Berryhill, pro se
345 East Pioneer Trail
Aurora, Ohio 44202

Robert Berryhill, pro se
Inmate No. 58898060
Morgantown Federal Correction Institution
P.O. Box 1000
Morgantown, WV 26507-1000


**ATTORNEYS FOR APPELLEES**

James R. Wooley
Mary M. Dyczek
Katie M. McVoy
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114

Robert B. Weltman
Weltman Weinberg & Reis Co., L.P.A.
323 W. Lakeside Avenue
Suite 200
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} This appeal arises from the trial court's order that vacated a settlement agreement entered into by appellants, Mary Berryhill ("Mary") and Robert Berryhill ("Robert") (collectively, the "Berryhills") and appellees Rustom Khouri ("Rustom"), Mary Khouri ("Khouri") (collectively, the "Khouris"), Carnegie Management and Development Corporation ("Carnegie") and various limited liability companies. The Berryhills additionally challenge the order that granted appellees summary judgment on their claim for fraudulent inducement to enter into a business relationship, and awarded appellees damages and attorney fees.

{¶2} On March 12, 2010, Mary filed a complaint against the Khouris, Carnegie, and various limited liability companies (collectively referred to as "appellees"), claiming a 10 percent ownership interest in various limited liability companies. Mary alleged that her husband, Robert, served as Carnegie's vice president of commercial development, and as part of Robert's compensation, she is entitled to a partial ownership interest in the various development deals that he completed. Mary set forth claims for inspection of records, breach of fiduciary duties, breach of contract, unjust enrichment, and conspiracy.

{¶3} For their answer, appellees admitted that Robert's compensation for various development projects made Mary eligible to receive an ownership interest of up to 10 percent in each project, and they admitted that she had been issued a Schedule K-1 statement, setting forth her receipt of income for several of the limited liability companies. Appellees maintained, however, as an affirmative defense, that the ownership interests were obtained by fraud. Appellees asserted that in September 2009, they learned that Robert had been stealing from appellees' Knoxville, Tennessee FBI building project. He was ultimately convicted of various

offenses related to this conduct.[1]  Appellees also alleged that further investigation uncovered additional thefts from appellees' development projects.  Appellees maintained that Mary was aware of Robert's scheme to embezzle funds and agreed to assist him, allowing him to put the 10 percent interest in the limited liability companies in her name.

{¶4}  Appellees also set forth claims against the Berryhills for aiding and abetting, tortious conduct, breach of contract, abuse of process, violation of Ohio's Corrupt Practices Act, fraudulent transfers, conspiracy, unjust enrichment, fraud in the inducement, and embezzlement.

{¶5}  On October 17, 2011, appellees moved for partial summary judgment and argued that neither Mary nor Robert are entitled to an ownership interest in three limited liability companies formed after Robert began embezzling funds.  On December 21, 2011, the trial court issued a four-page judgment entry in which it granted appellees partial summary judgment and held, in relevant part, as follows:

> It is undisputed that [Robert] began embezzling money from the Carnegie Group no later than August 6, 2008.  It is also undisputed that entities subject to this partial summary judgment were formed after August 6, 2008: Crown Point was formed on September 22, 2009; Canton Courthouse was formed on January 15, 2009; and Indy Fedreau was formed April 15, 2009.
>
> * * *
>
> Therefore, at the point of [Robert's] material breach, [appellees] were excused from performance.  Therefore [appellees] were not obligated to award any ownership interest to Mary after August 6, 2008, when Robert began embezzling money from the Carnegie Group and the LLCs.

---

[1] In April 2013, Robert pled guilty to five counts of mail fraud, two counts of wire fraud, and one count each of aggravated identity theft and false personation of an officer or employee of the United States.  He was sentenced to six years in prison.

**{¶6}** On November 16, 2012, appellees filed a second motion for partial summary judgment in which they asserted that they learned during the July 18, 2012 deposition of Robert that his prior representations about his education were untrue, and that he does not have a bachelor's degree in real estate development from the University of Colorado and does not have a master's degree in real estate development and finance from the University of Denver. Appellees argued that they had been fraudulently induced to hire Robert in 1998 based upon his false representations regarding his education. In support of this claim, appellees submitted an affidavit from Khouri, in which she averred in part as follows:

7. [Robert] sought employment with Carnegie in 1998. At that time, he represented to [Rustom] and me that he had a bachelor's degree in real estate development from the University of Colorado and undertook master's studies in real estate development and finance at the University of Denver.

8. [Rustom] and I relied on these representations when we made the decision to have [Robert] join Carnegie as an independent contractor. Given that [Robert] would be serving as Vice President and taking an active role in the development of Carnegie projects, it was important that he have the proper educational background.

9. Throughout his tenure at Carnegie, [Robert] frequently referenced his master's studies in real estate. He would tell me and other Carnegie employees about his educational background, touting his expertise and creative financing skills and bragging about how those skills were highly valued by his previous employer.

10. Carnegie's reliance upon [Robert's] representations about his education is clear from its actions during the parties' relationship. Carnegie regularly included [Robert's] educational background on proposals for government projects and seriously considered the advice he gave because it was given under the pretense that he had six years of education in real estate in addition to his real world experience.

11. As a result of [Robert's] lies about his education background, he was given a position at Carnegie as Vice President of Development. * * *

12. If I had known that [Robert] did not have a bachelor's degree and did not complete his master's studies, Carnegie would not have hired him.

{¶7} Appellees also demonstrated that Robert permitted the false educational information to be included within proposals that appellees submitted on various development projects, including appellees' 1999 proposal for the development and construction of the FBI field office building in Cleveland. Appellees asserted that newly discovered information indicated that Robert's thefts began as 2002, with the creation of sham invoices in the Cartario project.

{¶8} In opposition, Robert averred that he was never asked about his education at the time he was hired. On December 21, 2012, the parties entered into a settlement agreement.

{¶9} Several months after the settlement agreement was signed, on March 19, 2013, appellees filed a motion for relief from the settlement agreement and for attorney fees. Appellees maintained that the settlement was premised upon the Berryhills' fraudulent representations that they lacked assets and funds to satisfy a judgment. However, appellees later learned from Robert's 2012 involvement with the Veterans' Administration Butler project that the Berryhills actually had numerous assets, including cars, a house, and an ownership interest in a partnership agreement that was worth approximately $5.2 million. Robert also received income of approximately $35,000 during the time in which the settlement was being negotiated.

{¶10} The Berryhills initially opposed appellees' motion to vacate the settlement agreement, but withdrew their brief in opposition on April 23, 2013. On May 8, 2013, the trial court vacated the settlement agreement, following oral arguments. On that same date, the trial court also issued the following entry:

On oral arguments held before this court on 5/7/13 the court hereby grants the Defendant/Counter-claim Plaintiff's motion for partial summary judgment as

follows: the Court grants summary judgment on the Defendant/Counter-claim Plaintiff's claim for fraudulent inducement. The Court finds by clear and convincing evidence that counter-claim defendant [Robert] fraudulently induced the Defendant/Counterclaim Plaintiff into entering into the underlying employment contract by lying about his education background. [Robert] indicated that he completed a bachelors, as well as, had taken masters' courses when, in fact, neither were true. The Defendant/Counter-claim Plaintiff relied on this material misrepresentation as evidenced by that fact that within less than a year of his hire date, Defendant/Counter-claim Plaintiff included the [Robert's] false educational background in their submission of documents to the FBI for a project bid. Therefore, as the Defendant/Counter-claim Plaintiff was fraudulently induced into entering into the underlying employment contract, the contract is void and [Mary] does not have an interest in any of the LLCs listed in her complaint. As such, the court grants Defendant/Counter-claim Plaintiff's summary judgment as to all of plaintiff [Mary's] claims, and the court hereby dismisses those claims with prejudice. Furthermore, the court finds that there is no genuine issue of material fact as to whether [Robert] embezzled $219,796.45 from Knoxbi, and therefore grants summary judgment on Defendant/Counterclaim Plaintiff's embezzlement claim against [Robert] in the amount of $219,796.45. The court denies the Defendant/Counter-claim plaintiff's request to treble these damages. Additionally, the court denies the Plaintiff /Counter-claim Defendant's attorneys' motion to withdraw as counsel. The court orders that discovery be re-opened in this matter. An evidentiary hearing for attorney fees is set for June 4, 2013 at 2:00 pm, and trial for this matter is set for November 6, 2013 at 9:00 am.

{¶11} Following an additional hearing on May 29, 2013, the court also awarded appellees attorney fees and costs in connection with Robert's fraud and embezzlement and in connection with the Berryhills' fraudulent inducement to enter into the settlement agreement. In a written opinion detailing its analysis, the trial court observed that the action had been pending since March 2010 and involved complex and novel issues. The court also found that appellees are represented by a large corporate law firm, that there is detailed evidence regarding the amount of fees and costs, and that counsel had successfully defended against the Berryhills' claims that appellees owed them millions of dollars in connection with the limited liability companies. The court ordered the Berryhills to pay appellees $693,631.50 for attorney fees and $33,170.47 for costs. The Berryhills now appeal and assign the following error for our review:

The trial court erred in (i) granting partial summary judgment to Appellees on their fraudulent inducement claim; and (ii) awarding Appellees $693,631.50 in attorney fees on a single count of fraudulent inducement.

**{¶12}** Having reviewed the record de novo, and considered the controlling case law, we conclude that the assignment of error is without merit. Therefore, we affirm.

**{¶13}** An appellate court reviews a decision granting summary judgment on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

**{¶14}** Summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 1996-Ohio-326, 672 N.E.2d 654. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), the nonmoving party must set forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 1996-Ohio-211, 663 N.E.2d 639.

**{¶15}** Herein, the Berryhills challenge the trial court's award of summary judgment to appellees on appellees' counterclaim that Robert fraudulently induced appellees to hire him based upon his false representations. The Berryhills additionally challenge the award of attorney fees.

Fraud in the Inducement

**{¶16}** The elements of fraud in the inducement are:

"(1) a representation of fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with utter disregard and recklessness, as to whether it is true or false, (4) with the intent of misleading

another into relying upon it, (5) justifiable reliance upon the representation, (6) and a resulting injury proximately caused by the reliance."

*H&M Landscaping Co., Inc. v. Abraxus Salt, L.L.C.*, 8th Dist. Cuyahoga No. 94268, 2010-Ohio-4138, ¶ 22, quoting *Mtge. Electronic Registration Sys., Inc. v. Mosley*, 8th Dist. Cuyahoga No. 93170, 2010-Ohio-2886, ¶ 34, and *Natl. City Bank v. Slink & Taylor, L.L.C.*, 11th Dist. Portage No. 2002-P-0045, 2003-Ohio-6693, ¶ 23.

**{¶17}** The same fraud analysis is applied in cases involving résumé fraud and fraud on an employment application where the wrongdoing was of such severity that the employee would not have been hired if the employer had known the true facts, or would have terminated the employee on those grounds alone if the employer had known of it. *See, e.g., Miller v. Alldata Corp.*, 14 Fed.Appx. 457, 468 (6th Cir.2001).

**{¶18}** In this matter, the Berryhills insist that Robert was hired on the basis of his 15-year history in working in commercial real estate development, and that he was never asked about his educational credentials "when he was hired, nor did he volunteer the information at that time." The record contains unrefuted evidence that demonstrates that when Robert *first sought* employment with Carnegie in 1998, he made the untrue representations. The record also contains unrefuted evidence that Robert made repeated oral statements regarding his false credentials throughout the parties' association, including statements made under oath during his 2010 deposition in unrelated proceedings. Moreover, there is no genuine issue of material fact that Robert permitted a résumé containing false educational achievements to be presented to potential clients.

**{¶19}** In addition, it is undisputed that the false information was relied upon by appellees because Robert's falsely stated credentials were regularly included in proposals for governmental

projects, projects that would plainly demand truthful information regarding Robert and other key personnel involved in the project. In this regard, appellees demonstrated that the false representations were both material and relied upon in 1999 when Carnegie submitted the Phase I proposal for the FBI office in Cleveland. Moreover, since the association between the parties proceeded as a series of transactions, the false representations were material to each ensuing transaction.

{¶20} In accordance with all of the foregoing, the trial court did not err in awarding appellees summary judgment. This portion of the assignment of error is without merit.

Attorney Fees

{¶21} As an initial matter, we note that in general attorney fees may be awarded in connection with a claim for fraudulent inducement to enter into a contract. *See, e.g., Romp v. Haig*, 110 Ohio App.3d 643, 647, 675 N.E.2d 10 (1st Dist.1995); *Potter Fur & Roots, Inc. v. Potter Group Worldwide, Inc.*, 11th Dist. Portage No. 2005-P-0101, 2006-Ohio-4172. In addition, where a judgment is vacated because of fraud, a trial court may, within the proper exercise of its discretion, award the movant attorney fees as a sanction against the nonmoving party. *See Byers v. Robinson*, 10th Dist. Franklin No. 08AP-204, 2008-Ohio-4833, ¶ 23.

{¶22} When a court is empowered to award attorney fees, "the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991), quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (12th Dist.1985).

{¶23} A trial court's determination of reasonable attorney fees must generally begin with a calculation of "the number of hours reasonably expended on the case times an hourly fee."

*Bittner* at 145. In order to establish this minimum baseline for the determination of attorney fees, the party requesting the award bears the burden of providing evidence of hours worked, and the hours worked should be necessary to the action. *Unick v. Pro-Cision, Inc.*, 7th Dist. Mahoning No. 09MA 171, 2011-Ohio-1342, ¶ 27-30. The requesting party also bears the burden of establishing that the hourly rate is reasonable, and the amount is to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney. *Sivit v. Village Green of Beachwood*, 8th Dist. Cuyahoga No. 98401, 2013-Ohio-103, ¶ 70. Once the requesting party has adequately proven an appropriate number of hours worked and the attorney's reasonable hourly fee, the trial court may modify this baseline calculation by considering the factors listed in former DR 2-106(B), now found in Prof.Cond. R. 1.5, which include:

> [T]he time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation.

*Bittner* at 145-146.

{¶24} In this matter, appellees' lead attorney, James Wooley, testified regarding his extensive experience in federal criminal prosecution as an Assistant United States Attorney, a corporate civil litigation attorney at Baker & Hostetler, L.L.P., and then at Jones Day, where he is a partner. Wooley testified that initially, he focused upon recovering the funds that Robert wrongfully took from appellees. Wooley opined that after Robert pled guilty to his offenses in 2013, Mary did not have meritorious claims against appellees. He repeatedly warned her that

her interest in the various projects would be deemed invalid because of her husband's actions, and he attempted to obtain a restitution plan from Robert to settle the matter.

{¶25} Wooley further testified that when Mary disregarded his warning and filed this action, he was forced to take a defensive position, and then filed the counterclaims. Since the factual predicate of the lawsuit is Robert's fraud and embezzlement, he was required to reexamine all of Robert's dealings with Carnegie and appellees, as well as the conduct of Mary in order to follow the trail of funds to her. Discovery was both difficult and costly because of the failure of the Berryhills to provide information about their assets.

{¶26} Wooley also testified that he was very cost-conscious in his billing, but the three-year duration of the litigation as well as the various component pieces drove the fees to almost $700,000. Wooley explained that he did not bill for all of the hours worked. Specifically, he did not bill for all of the time he spent working with the FBI, he is not seeking fees for items that preceded the filing of Mary's complaint and is not seeking fees for preparing for the hearing on the second motion for partial summary judgment, which ultimately led to the settlement agreement. He worked on the matter with two associates in order to keep fees lower, whereas the Berryhills had three partners representing them.

{¶27} As to the hourly rate, Wooley testified that the rate at which the firm bills his time is commensurate with other large corporate firms in the area, including Squire, Sanders & Dempsey, L.L.P. (n.k.a. Squire Patton Boggs) and Thompson Hine, L.L.P. The rate for associates is lower than his rate, and he stated that he delegated the "heavy lifting" and day-to-day work on the case to the associates for this reason.

{¶28} Wooley sought fees in the amount of $693,631.50, or about $200,000 for each of the three years during which the case was pending. Wooley also testified that appellees incurred

various costs, such as, court reporter fees, research fees, copying, and courier services. The total for these items is $33,170.47.

{¶29} Mary presented no evidence in opposition. Rather, she urged the trial court to award a lower hourly rate and maintained that, since appellees prevailed only on the claim for fraudulent inducement, a reasonable fee amount would be $48,138. The trial court awarded appellees $693,631.50 in attorneys' fees and $33,170.47 for costs.

{¶30} We find no abuse of discretion. The fraud perpetrated by Robert was so extensive as to taint virtually all of the parties' complex and lengthy association. Moreover, the fraudulent actions, and concealment increased the difficulty and complexity of the litigation, increased the time and effort needed to determine the scope of Robert's actions as well as the true nature of his assets, and required both criminal prosecution and civil mechanisms to unravel. The fraud even continued throughout the settlement period and it was not until the conclusion of the litigation that appellees finally obtained an accurate picture of the conduct and assets of the Berryhills. Therefore, the trial court correctly determined that the Berryhills' extensive fraud was a "common core" of all of the fees sought. Accordingly, this matter required great professional skill in both criminal and civil litigation, and excellent results were obtained for the clients. In addition, the fees charged were greatly discounted and the hourly rate is commensurate with those charged by large corporate firms in this community.

{¶31} We conclude that the trial court did not abuse its discretion in rendering the attorneys fees award and the award of costs.

{¶32} The assignment of error is without merit.

{¶33} Judgment is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

KENNETH A. ROCCO, P.J., CONCURS;
KATHLEEN ANN KEOUGH, J., DISSENTS (SEE SEPARATE OPINION)


KATHLEEN ANN KEOUGH, J., DISSENTING:

{¶34} I respectfully dissent and disagree with the majority's decision to affirm the trial court's judgment granting partial summary judgment on the basis of fraud in the inducement. I would find that genuine issues of material fact exist whether Robert misrepresented his educational background prior to or at the time of being hired, thus inducing the appellees to hire him.

{¶35} In support of their motion for partial summary judgment on the fraud in the inducement claim, the appellees rely on Khouri's affidavit wherein she avers that Robert's education was discussed and relied on when he was hired, and that his educational background was submitted on development proposals and projects. She further averred that had she known about the lack of education Robert possessed, he would not have been hired. To substantiate their claims about Robert's misrepresentations, the appellees attached to their summary judgment

motion a project proposal submitted in September 1999 containing information regarding Robert's education.

**{¶36}** In response to appellees' claim, Mary submitted Robert's affidavit wherein he avers that his education was not discussed at the time of hire and that the Khouris did not request his résumé. Rather, he states that he was hired based on his 15-years of experience in the field of commercial real estate development and his substantial work with Developers Diversified Realty Corporation.

**{¶37}** The appellees contend that Khouri's affidavit is substantiated by the evidence, i.e., the 1999 development proposal. However, and unlike Khouri's affidavit, the appellees contend that Robert's affidavit is not supported by any evidence; thus, it is self-serving and does not establish a genuine issue of material fact. Therefore, according to the appellees, summary judgment is proper on this issue.

**{¶38}** First, I question whether the 1999 project proposal is even proper Civ.R. 56(C) evidence that a court may consider for summary judgment because although it is purportedly an exhibit from the August 14, 2012 deposition of Mary, the deposition excerpt attached to the appellees' motion for summary judgment does not contain any reference to this exhibit. Moreover, my review of the docket shows that Mary's deposition and the exhibits were not filed with the trial court. Thus, it cannot be verified whether this exhibit was actually used in Mary's deposition; and was therefore proper Civ.R. 56(C) evidence.

**{¶39}** In my view then, the court is presented with two self-serving affidavits — one by Khouri and the other by Robert. In the case of competing affidavits, it would be improper to conduct a credibility contest when reviewing a motion for summary judgment. *Welsh v. Estate of Cavin*, 10th Dist. Franklin No. 02AP-1328, 2004-Ohio-62, ¶ 34. Accordingly, viewing the

evidence in favor of the nonmoving party, genuine issues of material fact exist whether Robert misrepresented his educational background prior to or at the time of being hired.

{¶40} In addition, even if the project proposal could be considered, I would find that the appellees have not satisfied for summary judgment purposes the final element of fraud in the inducement — "resulting injury proximately caused by the reliance." The appellees have failed to present any evidence that they were harmed by Robert's alleged misrepresentation about his education at the time of hire. According to Khouri's affidavit, "the injury sustained was the payment of over $3 million in salary, benefits, and distributions from Carnegie and the Defendant LLCs over the course of the parties' eleven-year relationship." In my view, this "injury" was significantly outweighed by the benefit Robert provided to the appellees in the form of generating business and revenue for the appellees over eleven years. Clearly, the lack of education was not problematic for either the appellees depending on Robert or in his ability to continue his success in overseeing and retaining commercial development projects.

{¶41} Accordingly, I respectfully disagree with the majority affirming the trial court's decision granting summary judgment on the basis of fraud in the inducement in favor of the appellees on the appellant's complaint.

{¶42} The appellees also moved for summary judgment on appellant's complaint based on Robert's payment to the mayor of Ontario, which according to the appellees, was Robert's first fraud committed against the appellees; thus, breaching his duty of good faith. The appellees contend that once Robert created this material breach, they were excused from performing on the contracts and were not obligated to award any ownership interest to Mary on all but three of the defendant LLCs.

**{¶43}** In my view, the appellees have failed to show why a third-party's ownership interest should be extinguished based on another's illegal actions unrelated to the contract that created the ownership interest. I recognize that Mary's 10 percent ownership interest in these companies was based on Robert's employment and compensation agreement with the appellees, and that Mary provided no service to the appellees. I also recognized that Robert was subsequently convicted of embezzlement. However, the operating agreements at the subject of Mary's complaint are separate contracts creating an ownership interest to Mary. Robert's subsequent actions, whether legal or illegal, should have no effect on Mary's interest under these contracts. The appellees have not explained where Mary's actions extinguish her ownership interest in these companies.

**{¶44}** Accordingly, I would reverse the trial court's decision granting appellees' motion for partial summary judgment as it relates to appellant's complaint. Because I would reverse the trial court's decision, I would also reverse the trial court's decision granting attorney fees at this juncture.